**LEE v. GALBREATH.**

No. 4713.

Court of Civil Appeals of Texas. El Paso.

June 1, 1950.

Rehearing Denied June 21, 1950.

G. Woodson Morris and Albert U. Trevino, San Antonio, for appellant.

Carl Wright Johnson, Edgar Pfeil, and Nat L. Hardy, all of San Antonio, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Bexar County, Texas, 37th Judicial District.

William A. Lee, as plaintiff, and hereinafter designated as such, sued Donald W. Galbreath as defendant, hereinafter designated as such, to recover for personal injuries alleged to have been negligently inflicted on him by said defendant. The trial was to the court with a jury, submission on special issues. On the verdict returned the court entered a judgment in favor of the defendant, from which judgment the plaintiff has perfected this appeal.

A brief summary of the facts surrounding this accident and the pleadings of the parties will perhaps aid in an understanding of the issues involved, in a general sort of a way. Plaintiff, who was a police officer of the city of San Antonio, engaged in the performance of his duty, was riding in an automobile south on Broadway in the city of San Antonio. Another officer was driving the car. A car likewise going south on the same highway bumped into the rear of the car in which plaintiff was riding and the rear bumper of the city car thus became entangled with the front bumper of the car in its rear. The car in which plaintiff was riding was slowed down in order to investigate some unusual condition on a used car lot on said street; the collision thus occurred. Plaintiff and the driver of the car in which he was riding sought to disengage the bumpers of the two cars. They were assisted by two other police officers who were on or near the used car lot. While they were so doing defendant approached from the

north in his car and struck the rear of the car which had been entangled with the rear bumpers of the car in which plaintiff was riding. Plaintiff was struck and severely injured and rendered unconscious.

Plaintiff charged defendant with actionable negligence in various respects. That defendant was driving his car while intoxicated; driving same at an excessive rate of speed; failed to have his car under control; failed to maintain a reasonable lookout.

Defendant's pleading was a personal denial, and later, during the progress of the trial he asked and obtained leave to file a trial amendment in which trial amendment he charged plaintiff with acts and omissions alleged to constitute contributory negligence.

On the issue as to whether defendant was intoxicated at the time of the accident the jury found in favor of defendant; that the act of defendant in running his car into the back end of the automobile was negligence, was a proximate cause of the injury to plaintiff; found that on the occasion in question defendant did not have his car under proper control and such failure was negligence and a proximate cause of the injuries sustained by plaintiff; that plaintiff failed to keep a proper lookout; such failure was negligence and such negligence was a proximate cause of plaintiff's injuries. To summarize, plaintiff's cause of action was defeated by issues found in favor of defendant, the findings supported a judgment in favor of plaintiff to the amount of damage found by the jury but for such findings.

In answer to Special Issue No. 21 the jury found that just before and at the time of the accident complained of the plaintiff failed to keep such a lookout for southbound traffic as a person of ordinary prudence would have kept under the same or similar circumstances; found that such failure was a proximate cause of the accident in question; found that plaintiff was negligent in standing between the two automobiles stopped on the main travelled portion of a public street without having someone to watch and direct approaching traffic from such stopped cars; further that such

negligence was a proximate cause of the accident; found that the failure of the policemen or any of them to post prior to the accident some person to direct traffic was negligence and that such negligence was a proximate cause of the accident; found that just before and at the time of the accident the policemen or some of them failed to keep such a lookout as a person or persons of ordinary prudence would have kept under the same or similar circumstances, and same was the proximate cause of the accident. It is thought that ignoring the last two issues (as to the failure of the policemen to direct traffic and their failure to keep a lookout) that the findings on the issues just narrated required a verdict for the defendant.

Under elementary principles the plaintiff could only have been held accountable for his own acts and omissions.

Plaintiff's points of error will not be discussed in the order presented.

Plaintiff's 12th and last point of error is that the court erred in not granting plaintiff a new trial on account of the misconduct of the jury after its retirement to consider their verdict in this cause. Plaintiff charges First: That during the deliberations of the jury some of the jury stated to the others that Galbreath would be unable to pay any judgment rendered against him; Second: That some of the jurors stated that Lee was not legally married to Mrs. Lee; Third: That some of the jurors refused to answer as to the negligence charged against defendant until answers were returned as to the negligence charged against plaintiff; Fourth: That one of the jurors stated to another that the city would likely pay plaintiff a pension; Fifth: Two or more of the jurors asserted from time to time that they would not give the plaintiff anything; Sixth: That the wife of one juror being sick, he was very anxious to be discharged. The Deputy Sheriff in charge of the jury advised the jurors in substance that the way to arrive at a verdict speedily was to take a vote on it and let the majority rule; Seventh: That after several questions governing liability and non-liability had been answered, but before the verdict

94

was tendered into court, some of the jurors wanted to review their answers with the possible idea of changing some of same. It was asserted by several of the other jurors that they had no right to do this, and having answered the questions they had no right to change same.

Rule 327 of the Rules of Civil Procedure prescribed by the Supreme Court declares the law applicable where a new trial is sought on the ground of misconduct of the jury. It is as follows: "Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." This Rule has been applied by the courts many times. Its language is so clear and explicit that a construction is not required. The application of the rule sometimes presents difficulty.

Under the terms of the Rule as to whether the misconduct charge occurred is a question for the trial court on the hearing of a motion for a new trial. If the evidence raises an issue as to whether the misconduct charged occurred, it is a question of fact and the finding of the trial court is finally determinative of such question of fact. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. If the misconduct charged be established then the effect thereof becomes a question of law, the issue being taken into consideration the matters prescribed by the rule as to whether or not injury probably resulted to the complaining party. This being a question of law the finding of the trial court is not binding on the Appellate Court. Tumlinson v. San Antonio Brewing Ass'n, Tex.Civ.App., 170 S.W.2d 620, Wr.Ref.; Blaugrund v. Gish, Tex.Civ.App., 179 S.W.2d 257, affirmed 142 Tex. 379, 179 S.W.2d

266. Let us now then examine as to whether or not on conflicting evidence the trial court found against the contention of the plaintiff on the issue of misconduct. There seems to be no dispute in the evidence that one or more jurors stated to the other jurors that if a finding was made against defendant plaintiff would not get anything because defendant would be unable to pay the judgment. This was clearly an unsworn assertion as to the poor financial condition of defendant. It is very clear that if any of the jurors regarded the same or were influenced thereby such juror or jurors would be guilty of a breach of duty. In regard to the charge that during the course of the discussion one juror stated to the others that plaintiff was not married to his wife, this statement, we take it, amounted to a charge at least that plaintiff was living with a woman ostensibly his wife who was not such. Plaintiff testified that he was married and Mrs. Lee testified she was his wife; each testified to material facts in the case. There was not a shred of testimony in the trial of the case that they were not man and wife. Beyond any question if this occurred it was misconduct which probably resulted in injury to the plaintiff. Plaintiff sought to substantiate this alleged misconduct by the testimony of Juror Claude Sampson. Juror Sampson in regard to this point testified as follows:

"Q. State whether or not any juror said anything in the jury room as to whether Lee was married to his wife. A. Yes, that was said in the jury room.

"Q. What was said? A. Well, I can't be explicit on that because I don't remember the party's name, and I do not remember exactly what it was because I was lying on a bunk and was not too close anyway.

"Q. When was that said? A. That was said while we were in the jury room.

"Q. Do you know what juror it was? A. No, sir, I can not be explicit about that.

"The Court: Do you know who he was talking to about as not being married? A. Yes, he was talking about Lee.

"Q. Which juror was that? A. That is a point I don't remember just exactly

what his name was, I can't say definitely because I didn't pay enough attention to it.

"Q. Is the juror who said that here this morning? A. I don't think so, I don't know."

Juror Morris testified:

"Q. Did anybody say in the jury room when you were considering your verdict anything to the effect that Lee was not married to his wife? A. Not while I was in the jury room.

"Q. When did you hear it? After the jury was chosen—you were chosen on Monday morning. At any time from that time until you were discharged did anybody say anything about Lee not being married to his wife? A. No, sir, I don't think, that was said afterwards."

In substance he further stated that from the time he was sworn as a juror until he was discharged he didn't hear anyone say anything like that.

■ It is entirely possible that Juror Morris and Juror Sampson may each be correct. Each agreed that someone made the statement charged—one that it was said while the jury was officially discussing the case—the other that it was said after the jury had been discharged. However, the testimony does leave a doubt whether the statement was made at such a time and place as could have influenced the verdict. We hold that this, as to the misconduct, is not established by the undisputed testimony and the finding of the trial court is authoritative on the matter. The finding of the trial court as to whether charged misconduct had occurred is due great deference. This despite the fact it is hard to believe that Juror Sampson could have been mistaken. The matter could have hardly been the result of a suggestion; he swore the matter occurred in the jury room. The sole logical basis for a finding that it did not in fact occur there was evidence that a like statement was made after the jury was discharged. It is possible that he may be mistaken as to when and where the statement was made.

■ Jurors Bading and Jansky each, after the jury had retired and before the issues as to damages were reached, declared that they would not give the plaintiff a cent. This was established by the undisputed testimony of several of the jurors testifying on the motion for a new trial. Neither Juror Jansky nor Bading testified on the hearing of the motion for a new trial. The only way this could be brought about was to make their verdict bring about the result. This in the face of the court's charge as follows: "In considering and determining each question you must not take into consideration the effect of your answer thereto upon any other question or upon the rights of the parties respectively." Furthermore, these two jurors insisted that before they would finish the answers as to the negligent acts or omissions of defendant the jury must answer as to certain acts or omissions of plaintiff. This insistence prevailed and plaintiff was found guilty of contributory negligence. In our opinion there is no rule of law requiring a jury to answer issues in the order submitted. Hudson v. West Central Drilling Co., Tex.Civ. App., 195 S.W.2d 387. Some of the jurors said the plaintiff would probably receive a disability pension from the city. It was further said plaintiff was drawing compensation from the United States government and had not lost anything. These matters were not introduced in evidence so far as the record before us shows. They were not properly admissible in evidence. It was stated that defendant would be unable to pay any damages that might be assessed against him. There was some evidence that this was said while the damages were being considered, and after the other questions had been answered. This does not necessarily rob this misconduct of its harmful tendency. Of course misconduct must result in probable injury, under said Rule 327, Rules Civil Procedure, and unless injury probably resulted the new trial should be denied. Hudson v. West Central Drilling Co., supra. A verdict does not become an official act, that is, an act effective in law, until same has been received and accepted by the court. Before this time and up to the time of its tender for acceptance any juror may dissent therefrom. The question of the effect of the

proven misconduct in this case is in our opinion not free from doubt. In our opinion, however, it reasonably appears from the evidence at the hearing that plaintiff did not probably receive a fair and impartial trial before a fair and impartial jury. The recent case of Scoggins v. Curtis & Taylor, Tex.Civ.App., 219 S.W.2d 451, is deemed to have great bearing here. In that case one of the jurors said that the testimony of a certain witness was bribed. This juror, as in substance Jurors Bading and Jansky, declared his intention not to agree to anything in favor of plaintiff. It was stated that the plaintiff was not a poor man. Although damages were not assessed in Scoggins v. Curtis & Taylor, one of the jurors had information that Scoggins had insurance on his wife. One of the jurors stated in the jury room he had knowledge of the highway and knew it was impossible to move the truck from the highway. The acts of misconduct found in that case bear an analogy to the misconduct here established. It was there held that probable injury was established. It was there held that perhaps no single act was sufficient to justify the granting of a new trial, but taking into consideration all of them probable injury was established. The court cites Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302; Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642; Texas Electric Ry. Co. v. Wooten, Tex.Civ.App., 173 S.W.2d 463–469. In our opinion said case of Scoggins v. Curtis & Taylor, supra, bears a close analogy to the instant case. The assignment complaining of the misconduct of the jury is sustained.

██ It certainly was grave and serious misconduct on the part of the deputy sheriff to advise the jurors to be governed by a majority vote in arriving at their answers. The foreman and the other jurors were remiss in their duties as such in not advising this officer that he was violating his duty. They should have reported him to the court to be appropriately dealt with. Some of the jurors misinformed others as to the law in telling them that after they had made answers they did not have a right to change them before the verdict was re-

turned into court. It is a fact that under the law jurors cannot be heard in impeachment of their own verdict, but this we think goes further than the impeachment. Here, as in the case of Scoggins v. Curtis & Taylor, supra, and Smerke v. Office Equipment Co., supra, it may be that no single act of misconduct demands a new trial, but combined it is thought that they probably resulted in a denial of a fair trial to plaintiff.

██ The sustaining of the assignment renders it appropriate and necessary that we consider some of the other points of error urged by the plaintiff. Complaint is made that the trial court erred in admitting testimony that plaintiff had received his salary from the city up to the date of the trial. In our opinion this testimony should not have been admitted. Here it would not present reversible error as the finding was against plaintiff on the issue of contributory negligence.

██ The court permitted the defendant to testify that the officers had not filed a complain against him for being intoxicated. Plaintiff at the time of the accident, under the undisputed testimony, was knocked senseless, and could have hardly effected the arrest of defendant. Of course if plaintiff was physically able, being a peace officer, and defendant was driving a car while intoxicated it was his duty to have arrested him. However, the failure of the other officers at the scene of the accident to arrest defendant can not be used against plaintiff to establish that defendant was sober.

Further, issue 27 to the effect "Do you find from a preponderance of the evidence that the failure of the policemen or of any of them to post prior to the accident some person to direct the traffic was negligence?" The only negligence pertinent in this case is the negligence of plaintiff; he could not be held liable for the negligence of the other officers. If, however, the negligence of the other officers was the sole proximate cause of the injury, defendant would not be liable therefor. So as to question No. 30—in substance to effect as to whether or not the officers kept a reasonably careful lookout. This is not a material issue. In

our opinion plaintiff's objection to the court's definition of the word "intoxicated" is without merit.

The fifth point likewise that plaintiff was not guilty of contributory negligence is a matter of law, and a matter of keeping a lookout is thought to be without merit.

It is ordered that the judgment of the trial court be reversed and the cause remanded for another trial.