OTIS SPUNKMEYER, INC., Appellant,

v.

Nancy BLAKELY, Appellee.

No. 05–99–00606–CV.

Court of Appeals of Texas,
Dallas.

Nov. 1, 2000.

Gary C. Wallace, Hart, Buckley & Wallace, P.C., Dallas, for Appellant.

Before Justices OVARD,[1] MOSELEY, and ROACH.

## OPINION

JIM MOSELEY, Justice.

After the second jury trial in this case, the trial court rendered judgment holding appellant, Otis Spunkmeyer, Inc. ("Spunkmeyer"), liable for personal injuries sustained by appellee, Nancy Blakely ("Blakely"), when she bit into a cookie produced by Spunkmeyer that contained a foreign object. Spunkmeyer appeals, arguing: (1) the trial court abused its discretion in granting Blakely's motion for new trial after the first trial on the merits; (2) there was no jury finding that Spunkmeyer proximately caused Blakely's injuries; (3) the evidence is legally and factually insufficient to support the jury's findings concerning both liability and damages; (4) the jury's findings are in irreconcilable conflict; (5) the trial court should have rendered judgment on the findings the jury made before it was given an amended jury charge; and (6) the trial court erred in amending the charge after the jury had already begun deliberating. For the reasons set forth below, we reverse and remand this cause for a new trial.

### BACKGROUND

Blakely suffers from a condition known as temporomandibular joint dysfunction (TMJ) that affects the jaw bone joints. In 1982, 1986, and 1990, Blakely had surgeries on her joints affected by TMJ. Blakely testified that following these surgeries, she had virtually recovered from her TMJ symptoms.

On November 21, 1991, Blakely bit into an oatmeal-raisin cookie manufactured by Spunkmeyer. The cookie contained a hard object. Spunkmeyer contends the object was a raisin stem; a subsequent laboratory report stated the object was "a herbaceous stem, possibly a heat processed peanut plant." Blakely immediately experienced pain and swelling in her jaw. Blakely's jaw remained swollen for twelve days until she was able to see a doctor. As a part of the treatment she received for these injuries, she eventually underwent surgery on January 22, 1992. On September 14, 1994, Blakely underwent total joint replacement surgery.

Blakely sued Spunkmeyer and the cookie vendor. In 1997, the case went to trial and the jury reached a verdict in Spunkmeyer and the cookie vendor's favor. However, the trial court determined the jury had reached its verdict because it had concluded that Blakely was not an "ordinary user" of the cookie because of her TMJ and that the jury did not believe Spunkmeyer was responsible because it had complied with certain health codes. Therefore, the trial judge granted Blakely's motion for new trial as to Spunkmeyer.[2]

---

1. Justice John Ovard was a member of the panel at the time this case was argued and submitted for decision. Justice Ovard retired from the Court on July 31, 2000. Therefore, he did not participate in the issuance of this opinion. *See* Tex.R.App.P. 41(a), (b).

2. The trial court denied Blakely's motion for new trial as to the cookie vendor.

A second trial ensued, in which Blakely claimed that Spunkmeyer was liable based on causes of action for: (1) negligence; (2) strict liability for a manufacturing defect in Spunkmeyer's production of the cookie; and (3) breach of implied warranty of merchantability. During jury deliberations, the jury sent a note to the trial judge asking the judge to clarify the meaning of the term "injury" in the charge. The jury asked if "injury" concerned the trauma immediately after the incident or the surgeries. The trial judge answered the jury by referring it to the portion of the charge that stated: "When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning." Afterward, while the jury continued deliberating, the trial judge decided to amend the charge. While the trial judge was preparing the amended charge, the jury apparently answered all of the questions in the unamended charge before it. However, the trial judge refused to accept the answers as the jury's verdict. The trial judge gave the jury the amended charge and instructed the jury to continue its deliberations.

The jury questions relevant to this appeal, along with the amendments made by the trial judge and the jury's answers, are set forth below. Words through which a line is drawn indicate words the judge deleted from the charge by hand during the deliberations. The judge added the italicized words and judge's initials ("SLM") onto the charge by hand.

QUESTION NO. 1

Was there a manufacturing defect in the cookie at the time it left the possession of Otis Spunkmeyer, Inc. that was a producing cause of the occurrence in question?

A "defect" means a condition of the product that renders it unreasonably dangerous. An unreasonably dangerous product is one that is dangerous to an extent beyond that which would be con-templated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics.

"Producing cause" means an efficient, exciting or contributing cause, that in a natural sequence, produced the ~~injury~~ *occurrence / SLM*. There may be more than one producing cause.

Answer "Yes" or "No":

<u>No</u> [by the jury]

QUESTION NO. 3

Was the cookie dough supplied by Otis Spunkmeyer, Inc. unfit for the ordinary purposes for which such cookie dough is used because of a defect, and, if so, was such unfit condition a proximate cause of the ~~injury~~ *occurrence / SLM* in question?

A "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.

"Proximate cause" means that cause which, in a natural and continuance [sic] sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer "Yes" or "No":

<u>Yes</u> [by the jury]

QUESTION NO. 5

What sum of money, if paid now in cash, would fairly and reasonably compensate Nancy Blakely for her injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any

other element. Do not include interest on any amount of damages you find. *SLM Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.*

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Nancy Blakely.

Answer in dollars and cents for damages, if any, that were sustained in the past and that in reasonable probability will be sustained in the future.

Answer:

| | | |
|---|---|---|
| a. Physical pain | $ 25,000 | [by the jury] |
| b. Loss of earning capacity | $ 4,200 | [by the jury] |
| c. Disfigurement | $ 5,000 | [by the jury] |
| d. Physical impairment | $ 20,000 | [by the jury] |
| e. Medical care | $ 50,000 | [by the jury] |

Based on the jury's answers to the charge as amended,[3] the trial court rendered judgment for Blakely against Spunkmeyer, and Spunkmeyer appealed. Spunkmeyer's seventh issue addresses the first trial; the rest of its issues relate to the second trial.

## DISCUSSION

### I. NEW TRIAL GRANTED AFTER THE FIRST TRIAL ON THE MERITS

In its seventh issue, Spunkmeyer argues the trial court abused its discretion in granting Blakely's motion for new trial after the 1997 trial, which resulted in a jury verdict favoring Spunkmeyer. Spunkmeyer argues that the evidence in the first trial was legally and factually sufficient to support the jury's verdict and asks this Court to render judgment based on the first verdict.

█ An order granting a new trial is not subject to review either by direct appeal

from that order or from a final judgment rendered after further proceedings in the trial court. *See Cummins v. Paisan Constr. Co.,* 682 S.W.2d 235, 235 (Tex. 1984); *Lamberti v. Tschoepe,* 776 S.W.2d 651, 652 (Tex.App.—Dallas 1989, writ denied); *Burroughs v. Leslie,* 620 S.W.2d 643, 644 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Therefore, we overrule Spunkmeyer's seventh issue.

### II. JURY FINDINGS REGARDING PROXIMATE CAUSE

In its first issue, Spunkmeyer argues there is no finding by the jury on an essential element of Blakely's claim for breach of the implied warranty of merchantability. Specifically, Spunkmeyer contends there is no jury finding that such a breach *proximately caused the injuries* of which Blakely complains. As this was Blakely's only claim on which the jury found in her favor, Spunkmeyer asks this Court to reverse and render judgment against Blakely. We must determine whether the charge, as answered by the jury, is sufficient to support a judgment against Spunkmeyer based on this cause of action.

In the context of a products liability claim, the Texas Pattern Jury Charge discusses at length whether, and under what circumstances, the charge should ask if the defendant's conduct caused the "occurrence," "injury," or "occurrence or injury." *See* STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES, PJC 71.1 (1998 ed.) ("Pattern Jury Charge"). There is no case law directly analyzing the appropriate causation inquiry as to either the "occurrence" or "injury" in the context of a claim for breach of the implied warranty of merchantability. However, the discussion in the Pattern Jury Charge, and the cases cited therein dealing with the submission of causation in negligence, crashworthi-

---

**3.** In addition to the above findings, the jury found Spunkmeyer's negligence did not cause the "occurrence in question," and that there was not a defect in the marketing of the

cookie dough at the time it left the possession of Spunkmeyer that was a producing cause of the occurrence in question.

ness, and strict products liability settings, offer some guidance on the subject.

■ In a typical negligence case, the plaintiff must establish two causal nexuses: (1) between the defendant's negligent *act* and the *occurrence;* and (2) between the *occurrence* and the *injuries* of which the plaintiff complains. *See Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731 (Tex. 1984). The Texas Supreme Court has suggested the following language to submit these causal nexuses to the jury in a negligence case:

> Do you find from a preponderance of the evidence *that such action was a proximate cause of the occurrence in question?*
>
> . . .
>
> Find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate [plaintiff] for his *injuries,* if any, *resulting from the occurrence in question.*

*Id.* at 731 n. 2 (emphasis in original) (citations omitted); *see also Hilland v. Arnold,* 856 S.W.2d 240, 243 n. 2 (Tex.App.—Texarkana 1993, no writ) (personal injury case involving a pre-existing injury); STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES, PJC 71.1, 80.2 (1998 ed.). However, in crashworthiness and some products liability cases, the plaintiff's contention is that a defect, although not causing the injury-producing event or occurrence, enhanced the injuries resulting from that event. In those types of cases, the supreme court has recommended the charge inquire only as to the causal nexus between the defendant's *conduct* and the plaintiff's *injuries,* but not necessarily as to any causal nexus between the defendant's conduct and the injury-producing event or occurrence. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 428 (Tex.1984); *see also Upjohn Co. v. Freeman,* 885 S.W.2d 538, 548 (Tex.App.—Dallas 1994, writ denied).

■ As noted in the Pattern Jury Charge: "the pleadings and proof in each case will determine the choice of the terms 'occurrence,' 'injury,' or 'occurrence or injury' " in regards to the causation issues submitted to the jury. STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES, PJC 71.1 (1998 ed.). Similarly, the pleadings and proof in each particular case will determine what causation questions should be submitted to the jury in a claim for breach of an implied warranty of merchantability. *See id.* PJC 71.1, 71.8. We conclude that if a dispute exists as to whether a breach of the implied warranty of merchantability was the cause-in-fact of an injury-producing event or occurrence, the charge should inquire as to the causal nexuses between both: (1) the *breach* and the *occurrence,* and (2) the *occurrence* and the *injuries,* as it would in a normal negligence case. *Cf. Morgan,* 675 S.W.2d at 731. However, if a plaintiff does not contend that a breach of implied warranty was a cause-in-fact of the injury-producing event or occurrence, but does contend that the breach enhanced the plaintiff's injuries flowing from the injury-producing event or occurrence, the charge need only inquire whether the breach proximately caused the plaintiff's injuries, as it would in a crashworthiness or strict products liability case. *See Duncan,* 665 S.W.2d at 428; *Upjohn,* 885 S.W.2d at 548.

In the case before us, neither party presented evidence that anything other than Spunkmeyer's actions resulted in the hard object being inside the cookie. Indeed, in their briefs before this Court, both parties agreed that the cookie containing the hard object, as produced by Spunkmeyer, caused the initial pain and swelling Blakely experienced when she bit into the cookie. Thus, neither party disputed a causal nexus existed between Spunkmeyer's actions and the occurrence or injury-producing event. Rather, the causation issue contested before the jury was the extent to which the occurrence caused Blakely's injuries—Spunkmeyer arguing that Blakely's injuries were caused by her pre-existing TMJ condition and Blakely urging that her injuries were caused by Spunkmeyer's

breach of implied warranty. As a result, the causation in dispute was more analogous to the causation element of a crashworthiness claim.

However, Blakely's pleadings frame the causation element of her breach of implied warranty cause of action in a manner more analogous to a negligence case than a case involving crashworthiness or strict liability in tort. Blakely contends Spunkmeyer's breach proximately caused the injury-producing event or occurrence, and that the occurrence resulted in injuries. Consistent with this approach, the trial court's amended charge inquired about the two causal nexuses typically necessary in negligence cases, using language recommended for that purpose by the supreme court in *Morgan.* In response, the jury found that: (1) Spunkmeyer's breach of the implied warranty of merchantability proximately caused the "occurrence in question," and (2) certain injuries resulted from the occurrence.

Although we question whether this is the proper method of submitting Blakely's breach of implied warranty cause of action, Spunkmeyer does not contest this "two nexus" approach of submitting the case to the jury.[4] Rather, Spunkmeyer argues the jury's answers do not amount to a finding that Spunkmeyer's breach of the implied warranty of merchantability *proximately caused* Blakely's *injuries.* Spunkmeyer argues this "omitted" finding cannot be deemed in support of the judgment because it objected to the amended charge on those grounds. *See* TEX.R.CIV.P. 279.

Although the jury question regarding Blakely's injuries did not use the phrase "proximate cause," that phrase was used in the question inquiring as to the causal nexus between the breach of warranty and the "occurrence in question." In doing so,

the charge utilized language recommended by the supreme court for use in negligence cases. *See Morgan,* 675 S.W.2d at 731. The jury found Spunkmeyer's breach of implied warranty proximately caused the "occurrence in question" and that certain injuries resulted from that "occurrence."

■ The trial court did not define "occurrence" when it amended the charge by inserting that word in place of the word "injury." If possible, however, we will interpret the jury's findings in a manner to uphold the judgment. *See Upjohn,* 885 S.W.2d at 552–53; *Jackson v. United States Fidelity & Guar. Co.,* 689 S.W.2d 408, 412 (Tex.1985). Thus, we look to the possible meanings of "occurrence in question" to see if any of them would result in findings supporting the judgment.

It is clear that "injury" and "occurrence" are not synonymous. *See Upjohn,* 885 S.W.2d at 548. However, if they were used synonymously in the charge, then issue five nonsensically asked the jury to find the amounts that would compensate Blakely for her injuries that resulted from her injuries.

In oral argument, when specifically asked what was the "occurrence in question" referred to in the charge, both parties said it was "Blakely biting the cookie." However, as noted above, Blakely did not plead or prove that she bit into the cookie because of Spunkmeyer's breach of warranty. To the contrary, Blakely's pleadings and proof are that she bit into the cookie *because she did not know* of Spunkmeyer's alleged breach. Thus, Blakely's judgment on her implied warranty of merchantability claim cannot be supported if the "occurrence in question" is Blakely's biting into the cookie.

■ The "occurrence in question" has been defined as "the legal basis of the

---

4. As noted above, the only causation issue in dispute was the extent, if any, to which the occurrence caused Blakely's injuries. Thus, under the facts of this case, the issues to be submitted to the jury are more analogous to those in a crashworthiness or strict liability

case, in which the proper submission would normally inquire only whether the breach proximately caused the plaintiff's injuries. *See Duncan,* 665 S.W.2d at 428; *Upjohn,* 885 S.W.2d at 548.

lawsuit." *Upjohn*, 885 S.W.2d at 546. It is axiomatic that the legal basis for asserting a breach of the implied warranty of merchantability is the breach itself; thus, in the context of Blakely's claim, the "occurrence in question" would be the breach itself—*i.e.*, Spunkmeyer's sale of a cookie that was unfit for the ordinary purpose for which cookies are used.[5] However, in the context of the amended charge, if the "occurrence" is the breach of the implied warranty of merchantability, then jury question three asked if the breach of the implied warranty of merchantability proximately caused the breach of the implied warranty of merchantability, another nonsensical result.

Thus, this case illustrates the problems involved in deciding whether to ask the jury about the "occurrence," the "injury," or the "occurrence or injury." *See* STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES, PJC 71.1 (1998 ed.). Specifically, it illustrates the advisability of clearly defining any use of the word "occurrence" in the charge, and reviewing the pleadings, proof, and the remainder of the charge to insure the rest of the jury questions make sense in light of that definition. *See id.*

However, if the "occurrence in question" referred to in the charge is construed to refer to "Blakely biting down on the hardened object," then the jury effectively found that Spunkmeyer's breach of the implied warranty of merchantability proximately caused Blakely to bite down on the hard object in the cookie, and that certain injuries resulted from her biting down on that hard object. Despite the questionable, "two-nexuses" approach to causation used in the charge, defining "occurrence in question" in this manner renders the jury findings sufficient to support Blakely's judgment on her claim for breach of implied warranty of merchantability.

■ In summary, both parties approached the causation element of Blakely's breach of implied warranty claim in a manner analogous to a negligence claim, and the charge utilized language recommended by the supreme court for use in negligence cases. *See Morgan*, 675 S.W.2d at 731. The jury found that Spunkmeyer's breach of the implied warranty of merchantability proximately caused the "occurrence in question" and that certain injuries resulted from that occurrence. Interpreting the "occurrence in question" to mean Blakely's biting on the hard object in the cookie, *see Upjohn*, 885 S.W.2d at 552–53, we conclude, in this instance, that the jury's findings amount to a finding that Spunkmeyer's breach of the implied warranty of merchantability proximately caused Blakely's injuries. *See Morgan*, 675 S.W.2d at 731 n. 2.[6] We overrule Spunkmeyer's first issue.

---

**5.** Reviewing Blakely's cause of action outside of the context of her personal injuries confirms that the legal basis for bringing the suit is Spunkmeyer's alleged breach and further illustrates the untenable nature of the assertion that the occurrence was Blakely biting the cookie. Assume Blakely bought a cookie that violated the implied warranty of merchantability because it contained a foreign object. However, instead of biting into the cookie, she broke it open, discovered the foreign object, and purchased another cookie to replace it. In that instance, she would still have a claim for breach of the implied warranty of merchantability. Her remedy would be the difference in value between the cookie as purchased and the cookie as it would have been without the defect, with the possible addition of incidental and consequential damages, such as any reasonable expenses incurred to replace the defective cookie. *See* TEX.BUS. & COM CODE ANN. §§ 2.714(b), 2.715(a) (Vernon 1994). Thus, it is axiomatic that the "occurrence in question" in the context of Blakely's breach of the implied warranty of merchantability claim is the breach of implied warranty itself, not Blakely's subsequent biting into the cookie.

**6.** We recognize that the damage question in *Upjohn* used the words "proximate cause" to inquire as to the nexus between the defendant's actions and the plaintiff's damages. *See Upjohn*, 885 S.W.2d at 547. However, that language was not central to the holding in that case. The relevant issue in *Upjohn* concerned whether a jury's finding of zero damages constituted a finding of no causal nexus between the defendant's acts and the plaintiff's injuries.

## III. LEGAL SUFFICIENCY OF THE EVIDENCE

In its second and third issues, Spunkmeyer argues, among other things, that the evidence is legally insufficient to support findings: (1) of a causal nexus between Blakely biting into the cookie and the injuries she sustained for which the jury awarded damages; (2) that there was a defect in the cookie that made the cookie unfit for its ordinary purpose; and (3) that Blakely's injuries were foreseeable.

### A. Standard of Review

When an appellant challenges the legal sufficiency of the evidence on an issue on which it did not have the burden of proof, the appellant must demonstrate there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). In reviewing a "no evidence" challenge, we consider only the evidence and inferences tending to support the adverse finding and disregard all contrary evidence and inferences. *See Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the "no evidence" challenge fails. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992).

### B. Causation of Injuries

In its second issue, Spunkmeyer challenges the legal sufficiency of the evidence to support a finding of a causal nexus between Blakely biting into the cookie and the injuries she sustained for which the jury awarded damages. Blakely's oral and facial surgeon, Dr. James Wilson ("Wilson"), testified he believed that Blakely had sustained an injury when she bit into the cookie. He also stated that when he examined Blakely on December 4, her face was still swollen from when she bit into the cookie on November 21. Wilson testified Blakely's swelling, which lasted for twelve to fourteen days after the incident, indicated significant trauma to her jaw. Wilson further stated that because Blakely's condition did not respond favorably to treatment, surgery became inevitable. Wilson testified that prior to the cookie incident, Blakely's TMJ had improved to the point where she was pain-free and symptom-free. According to reasonable medical probability, Wilson stated that Blakely, having been pain-free and symptom-free prior to the cookie incident, could possibly have experienced years without problems with her jaw joints. Wilson said Blakely's TMJ, however, was exacerbated after the cookie incident.

Blakely testified that, following her surgery in 1990, she had the best results she had experienced from her TMJ-related surgeries. She testified that, after the 1990 surgery, she was virtually symptom-free; she was able to open her mouth, chew, and swallow naturally. She further described the swelling, pain, and limitations to the range of her jaw motion she experienced after she bit into the cookie.

Considering the evidence and inferences supporting the jury's verdict, including the evidence noted above, and disregarding all evidence and inferences to the contrary, we conclude there was more than a scintilla of evidence to support a proximate cause relationship between the biting of the cookie and Blakely's injuries. We overrule Spunkmeyer's second issue inasmuch as it challenges the legal sufficiency of the evidence.

### C. Existence of a Defect

In its third issue, Spunkmeyer challenges the legal sufficiency of the evidence supporting the jury's finding on Blakely's implied warranty of merchantability claim. Specifically, it claims there is not evidence to support a finding that a defect in the cookie dough used to manufacture the cookie made it unfit for its ordinary purpose.

The warranty of merchantability imposed by section 2.314 of the Texas Business and Commerce Code "is a representation about the implied quality or suitability of a product that the law implies

and imports into a contract, 'in view of all facts and circumstances attending the transaction, including the nature of the property, terms of the agreement, and trade usages.' " *American Tobacco Co. ., Inc. v. Grinnell,* 951 S.W.2d 420, 435 (Tex. 1997) (quoting *Donelson v. Fairmont Foods Co.,* 252 S.W.2d 796, 799 (Tex.Civ. App.—Waco 1952, writ ref'd n.r.e.)). To recover damages for breach of an implied warranty of merchantability, a plaintiff must prove there was some defect in the product, that is to say, a condition of the goods that renders them unfit for the ordinary purpose for which they are used because of a lack of something necessary for adequacy. *See Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 444 (Tex.1989).

In addition to the above evidence, there was evidence the object in the cookie was: (1) hard; (2) not easily cut with a metal blade; and (3) 30.9 millimeters by 8.8 millimeters by 4.9 millimeters in size. Also, David Primrose, the quality control manager for Spunkmeyer's West Coast manufacturing operations, testified the cookie into which Blakely bit was not produced as Spunkmeyer intended and that the cookie contained an object that a consumer would not expect to find in the cookie. Primrose also stated the cookie injured Blakely and he believed Spunkmeyer was responsible to some degree for Blakely's injuries.

Considering the evidence and inferences supporting the jury's verdict, including the evidence noted above, and disregarding all evidence and inferences to the contrary, we conclude there is more than a scintilla of evidence to support a finding that the cookie dough was unfit for its ordinary purpose in this case because it lacked something necessary for adequacy, namely the absence of concealed, hard objects capable of injuring a consumer.

Spunkmeyer contends the presence of a hard object in an oatmeal-raisin cookie did not make the cookie dough unfit for its ordinary purpose and, therefore, it was not defective. Spunkmeyer cites *General Motors Corp. v. Brewer,* 966 S.W.2d 56 (Tex. 1998), to support this proposition. In *Brewer,* the plaintiffs complained that certain seatbelts purported to be an automatic restraint system, which would not require any action by the user to engage the system, when, in fact, it was almost impossible for the user to get in and out of the vehicle without first having to detach the seatbelt from the door of the vehicle. *Id.* at 57. The court in *Brewer* held that just because the restraint system was more cumbersome to use than anticipated did not render the restraint system unfit for the ordinary purpose for which it is used. *See id.* It stated, "[a] product which performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like, or even as well as it could." *Id.* Based on *Brewer,* Spunkmeyer argues that simply because the cookie may not have met Blakely's expectation of softness does not render the cookie unfit for the ordinary purpose of edibility.

However, *Brewer* is distinguishable from the present case. The ordinary purpose for a vehicle restraint system is to protect the occupant of a vehicle in the event of a collision or other rapid deceleration. Assuming the consumer uses (*i.e.,* does not bypass) a restraint system, whether that system is more difficult to use than anticipated does not affect whether it is fit for its ordinary purpose of protecting the user.

The ordinary purpose of cookie dough is to make an edible cookie; this purpose encompasses being eaten without injury from a concealed, hard object embedded in the cookie. Contrary to Spunkmeyer's assertion, if a foreign object concealed within a cookie injures the consumer when he or she bites down, the cookie is not fit for its ordinary purpose; it does not "perform[ ] its ordinary function adequately." *Id.* This is true regardless of the texture or hardness of the rest of the cookie. Therefore,

Spunkmeyer's reliance on *Brewer* is misplaced.

We overrule Spunkmeyer's third issue inasmuch as it challenges the legal sufficiency of the evidence regarding the existence of a defect.

### D. Foreseeability

■ Also in its third issue, Spunkmeyer challenges the legal sufficiency of the evidence to support a jury finding that Blakely's injuries were foreseeable. Spunkmeyer argues that because its experts testified they were not aware of any other case in which someone was injured by a stem and, because of Blakely's TMJ, Blakely's injuries were not foreseeable.

■ Foreseeability requires that "a person of ordinary intelligence should have anticipated the danger created...." *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995). The supreme court has said:

> The danger of injury is foreseeable if its "general character ... might reasonably have been anticipated." The question of foreseeability, and proximate cause generally, involves a practical inquiry based on "common experience applied to human conduct." It asks whether the injury "might reasonably have been contemplated" as a result of the defendant's conduct. Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury.

*Id.* (citations omitted).

Further, it is well settled that a tortfeasor takes the plaintiff as he finds her. *See Coates v. Whittington,* 758 S.W.2d 749, 752 (Tex.1988) (a.k.a. the "eggshell skull rule"). Therefore, the fact that Blakely's TMJ may have rendered her especially susceptible to injury is irrelevant to our foreseeability analysis. Instead, we consider whether it is foreseeable that a similarly situated consumer could be injured by a hard object contained in a cookie.

In addition to the evidence regarding the size and hardness of the object hidden within the cookie, Primrose testified that an object of that size and hardness, if hidden in food and unknown to the consumer, was dangerous. Considering all the evidence supporting the jury's verdict, including the evidence noted above, and disregarding all evidence and inferences to the contrary, we conclude there is more than a scintilla of evidence that the type of injuries Blakely sustained were foreseeable. *See Doe,* 907 S.W.2d at 478. Thus, we overrule Spunkmeyer's third issue inasmuch as it challenges the legal sufficiency of the evidence regarding foreseeability.

### IV. IRRECONCILABLE CONFLICT IN THE JURY ANSWERS

In its fourth issue, Spunkmeyer argues there is an irreconcilable conflict between the jury's answers to questions one and three in the jury charge. In response to question number one, the jury answered "no" to whether a manufacturing defect in the cookie was a producing cause of the occurrence. In response to question number three, the jury answered "yes" to whether the cookie dough supplied by Spunkmeyer was unfit for ordinary purposes because of a defect and, if so, whether the unfit condition was a proximate cause of the occurrence.

### A. Standard of Review

■ To determine whether a fatal conflict exists:

> [we consider] each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict.

*Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 991 (1949).

If we determine a fatal conflict exists, we must remand the case to the trial court for a new trial. *See Cotton Belt R.R. v. Hendricks*, 768 S.W.2d 865, 870 (Tex.App.— Texarkana 1989, no writ) (citing *Insurance Co. of N. Am. v. Brown*, 394 S.W.2d 787 (Tex.1965)).

## B. The Law

 Texas law recognizes that strict liability for a manufacturing defect and breach of an implied warranty of merchantability are two separate causes of action. *See Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456, 458, 461–62 (Tex. 1980). Nevertheless, depending on the facts of each case, whether a manufacturing defect exists for purposes of products liability often resolves whether a product was defective and, therefore, breached an implied warranty of merchantability. *See Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 666 (Tex.1999).

For example, in *Hyundai*, the supreme court concluded that, under certain factual scenarios, the "defect" at issue in a claim for strict liability and a claim for breach of implied warranty may be functionally identical. In *Hyundai*, the defect in question was the crashworthiness of a car. The plaintiff argued she sustained personal injuries that were more serious than she would have otherwise sustained because the car was defectively designed. *See id.* at 662. The supreme court said the circumstances of that case illustrated that the two concepts of "defect" for strict-liability and breach of implied warranty claims can involve identical fact determinations. There, both of the plaintiff's claims arose from a single complaint—that design defects in the roof and restraint systems prevented the car from affording adequate protection in a vehicle rollover. *See id.* at 665. The plaintiff did not plead or attempt to prove that some defects related only to her strict liability claim and some only to her breach of implied warranty claim. *See id.* The court also noted the plaintiff did not offer any evidence to prove a breach of implied warranty that did not also support her claim of strict liability. *See id.* Under those circumstances, the court observed that a vehicle "cannot be unfit for ordinary use but not unreasonably dangerous, nor can it be unreasonably dangerous but fit for ordinary use; it must be both or neither." *See id.*

Conversely, in *Plas–Tex*, the supreme court stated:

> The defect in an implied warranty of merchantability case is not the same as the defect in a strict products liability case. In the context of an implied warranty of merchantability case the word "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy. In the area of strict products liability, however, the word "defect" means a condition of the product that renders it unreasonably dangerous.

*Plas–Tex*, 772 S.W.2d at 444. At issue in *Plas–Tex* were defective resins used in the production of fiberglass swimming pools, which caused property damage by causing the pools to delaminate. *Id.* at 443. However, there was no allegation or proof that the resins or resulting delamination made the swimming pools unreasonably dangerous. *Id.*

In the current case, we must determine whether the defect at issue in the manufacturing defect claim and the breach of implied warranty of merchantability claim are the same. In light of *Hyundai* and *Plas–Tex*, determining the congruence, *vel non*, of the two concepts of defect requires a fact-intensive review of the pleadings, the evidence, and the nature of the injury. *See Costilla v. Aluminum Co.*, 835 F.2d 578, 579 (5th Cir.1988); *see also Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 95 (3d Cir.1983); *Hyundai*, 995 S.W.2d at 665.

In the present case, the record demonstrates that: (1) there was one defect at issue—the existence of the hard object hidden within the cookie; (2) this single

defect was alleged for both the strict liability and the breach of warranty claims; (3) no evidence was offered to prove breach of warranty that was not also offered to prove strict liability; (4) this case involves personal injuries; (5) this case does not involve property damage; and (6) an agent of the defendant admitted the cookie contained an object a consumer would not expect to find, and that an object of the size and hardness of that found in the cookie, if hidden in food and unknown to the consumer, was dangerous. In light of these facts, we conclude this case is more analogous to *Hyundai*. Therefore, the jury questions regarding the existence of a defect for purposes of strict products liability and for breach of an implied warranty of merchantability in this case involve identical factual determinations.

## C. Reconciliation

The jury answered "no" to whether a manufacturing defect in the cookie was a producing cause of the occurrence. However, the jury also answered "yes" to whether the cookie dough supplied by Spunkmeyer was unfit for ordinary purposes because of a defect and, if so, whether the unfit condition was a proximate cause of the occurrence. Based on our conclusion that the "defect" at issue in Blakely's claim for strict liability and her claim for breach of warranty are functionally identical, the jury's answers to these questions appear to be in conflict.

In addition to inquiring into the "defect" element of the strict liability and warranty claims, questions one and three also placed before the jury differing standards of causation relevant to each claim. Therefore, before we conclude the jury's answers to these issues are irreconcilable, we must analyze these causation elements to determine if they provide a means of resolving the apparent conflict.[7] *See Little Rock*, 222 S.W.2d at 991.

We have already determined that the "defect" at issue in the strict liability claim and the breach of implied warranty claim in this case are functionally identical. If the jury answered question one "no" and question three "yes" based on the differing causation element submitted in each issue, it would have had to determine that any defect *was not a producing cause* of the occurrence (question one) but *was a proximate cause* of the occurrence (question three). However, proximate causation subsumes within it the concept of producing cause ("but for" cause). *See Hyundai*, 995 S.W.2d at 667; *Peeler v. Hughes & Luce*, 868 S.W.2d 823, 828 (Tex.App.—Dallas 1993), *aff'd*, 909 S.W.2d 494 (Tex.1995). An act or defect that is not a producing cause cannot, as a matter of law, constitute a proximate cause. *Cf. Hyundai*, 995 S.W.2d at 667; *Peeler*, 868 S.W.2d at 828. Consequently, the differing causation elements submitted in questions one and three do not provide a basis for resolving the apparent conflict between the jury's answers to these questions.

In summary, the defects at issue in questions one and three are functionally identical. Further, the differing causation elements of the two questions cannot explain the jury's answer of "no" to question one and "yes" to question three. Disregarding the answer to question one, the rest of the jury's verdict would require a judgment in favor of Spunkmeyer. Conversely, disregarding the answer to question three, the rest of the jury's verdict would require a judgment in favor of Blakely. Thus, the jury's answers to questions one and three are in fatal conflict. *See Little Rock*, 222 S.W.2d at 991. Because it is impossible to reconcile this con-

7. We recognize that question number one also requires a finding that the cookie was defective *at the time it left possession of Spunkmeyer*. However, because a review of the entire record demonstrates there is no evidence to support a negative finding based on that element, we need not address it in this analysis.

flict, we sustain Spunkmeyer's fourth issue.

### V. THE JURY'S FIRST "VERDICT"

In its fifth issue, Spunkmeyer argues that the court erred in refusing to accept, as the jury's verdict, the jury's answers to the charge prior to the judge's amendments, and render judgment on the jury's answers to the unamended charge. Spunkmeyer asks this Court to render judgment on the jury's answers to the unamended charge.

■ It is well-settled law that a verdict does not become an official act that is effective in law until it has been received and accepted by the court. *See Dilbeck v. Ideal Bread Co.,* 562 S.W.2d 563, 564 (Tex. Civ.App.—Texarkana 1978, no writ); *Jones v. Square Deal Cab Co.,* 501 S.W.2d 746, 748 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.); *King v. Smith,* 459 S.W.2d 202, 204 (Tex.Civ. App.—Corpus Christi 1970, no writ); *Wheeler v. Oxford,* 321 S.W.2d 188, 190 (Tex.Civ.App.—Eastland 1959, no writ); *Lee v. Galbreath,* 234 S.W.2d 91, 95 (Tex. Civ.App.—El Paso 1950, writ ref'd n.r.e.). It follows that, until such time as the trial court accepts the jury's verdict, a judgment may not be rendered thereon.

■ In the present case, the trial court expressly refused to accept, as the jury's verdict, the jury's answers to the unamended charge. The trial court had no duty to render judgment on jury answers that had not yet been accepted as a verdict because such answers had no legal effect. *See Dilbeck,* 562 S.W.2d at 564; *Jones,* 501 S.W.2d at 748; *King,* 459 S.W.2d at 204; *Wheeler,* 321 S.W.2d at 190; *Lee,* 234 S.W.2d at 95. We overrule Spunkmeyer's fifth issue.

### CONCLUSION

Because we have concluded there was a fatal conflict between the jury's answers to questions one and three of the charge, we sustain Spunkmeyer's fourth issue. In light of our holding, we need not address Spunkmeyer's second and third issues inasmuch as they challenge the factual sufficiency of the evidence, and we need not address Spunkmeyer's sixth issue concerning the trial court's amending of the jury charge. We overrule all other issues. We reverse and remand this cause to the trial court for a new trial.