**BENJAMIN FRANKLIN SAVINGS ASSOCIATION, Appellant,**

v.

**Johnnie KOTRLA and Beverly Kotrla, Appellees.**

No. A14–87–00178–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 20, 1988.

Robert G. Devlin, Houston, for appellant.

Randall B. Clark, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

MURPHY, Justice.

This case arises out of a suit for money damages brought by Johnnie and Beverly Kotrla (Kotrlas) against Benjamin Franklin Savings Association (BFS) alleging breach of contract, negligence and gross negligence on the part of the savings institution in the handling of the Kotrlas' accounts. Raising 29 points of error, BFS appeals from a jury verdict awarding the Kotrlas $8,000 actual damages, $28,000 punitive damages and $10,000 in attorneys' fees. In their reply brief, the Kotrlas bring one cross-point of error. We reform the judgment and affirm.

The facts giving rise to this suit are, for the most part, undisputed. On August 4, 1984, the Kotrlas visited the Landing at Seven Coves, a time share condominium project on Lake Conroe, at which time they wrote a check (check no. 399) on their regular checking account (account # 20235479–10, hereinafter account # 10) for $8000 to purchase the timeshare. However, by August 7, they had decided to rescind the transaction. On that date at

8:00 am, Mrs. Kotrla went in person to the downtown branch office of BFS and completed a written stop payment order on check no. *398*. The stop order contained the correct amount and date of the check in addition to the incorrect check serial number. At the time that she completed the stop payment order, Mrs. Kotrla was assured by BFS personnel that the check had not yet cleared the bank. The stop payment request was then phoned by an employee to the main office where it was recorded in the stop payment log. Mrs. Kotrla claimed that she called BFS later that day upon discovering her error in the check number. BFS disputed this claim.

In addition to completing the stop order at BFS that morning, Mrs. Kotrla also transferred $7800 from her regular checking account into her money market account (account # 20235479–12, hereinafter account # 12) in order to get the higher interest rate paid on money market funds. It was her testimony that the funds had been put into account # 10 to cover the transaction with the Landing at Seven Coves and were redeposited in account # 12 as a result of the cancellation of that transaction and her desire to avoid further loss of interest at money market rates.

That same day, check no. 399, having been deposited by the Landing at Seven Coves prior to their receiving notice of the cancellation, was presented to BFS for payment. The ensuing events indicate that BFS did not at any time consider or comply with the stop payment order entered earlier that day by Mrs. Kotrla. When the check came through, the Kotrlas had insufficient funds in account # 10 to pay it. BFS, later claiming that it "had to make a business decision whether or not to pay the check", decided that the $7800 transfer of funds out of account # 10 was made in error. Without even making a phone call to the customer, a BFS supervisor gave instructions to an employee who then changed the suffix on the account number from –10 to –12 and paid the check out of the Kotrlas' money market account. In spite of this "business decision" and the subsequent actions taken by BFS in paying the check, the Kotrlas were also sent an "nsf" notice by

BFS, stating that check no. 399 had been returned unpaid due to insufficient funds and a charge of $20.00 was levied against their account. It was only upon receipt of their monthly statement at the end of August that the Kotrlas learned that the $8000 check had been paid.

The Kotrlas first notified BFS in person of their discovery. They then sent a written demand letter insisting that the payment be reversed and that their account be credited in the amount of $8000. Upon refusal by BFS, the Kotrlas filed suit. In answer to sixteen special issues the jury found that BFS breached its depository agreement with the Kotrlas by paying check no. 399; that it paid the check over a valid stop payment order; that it willfully altered the account number on the check; that such acts were negligent and were a proximate cause of damages suffered by the Kotrlas in the amount of $8020.00. (The $20.00 award was deleted by the trial court because there were no pleadings to support it.) In addition, the jury determined that the conduct of BFS in altering the account number of the check was the result of such conscious indifference to the rights of the plaintiffs as to constitute gross negligence and assessed punitive damages of $28,000.00.

Pursuant to BFS's claims that the Kotrlas were negligent in and should be estopped by their failure to seek recovery from the Landing at Seven Coves, the jury was presented with five defensive issues. In the first of these, the jury was asked "Do you find from a preponderance of the evidence that the Kotrlas failed to follow up with the Landing at Seven Coves in an attempt to rescind their contract?" To this the jury answered, "We do not." All other defensive issues including comparative negligence issues were predicated on an affirmative response to this first issue and were therefore not reached by the jury.

For the sake of brevity and convenience, we will address BFS's twenty nine points of error in the same groupings which BFS used in its brief.

■ In the first group, containing points 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, and 17,

BFS claims the evidence is factually insufficient to support the jury's answers to many of the special issues, especially those inquiring about gross negligence, proximate cause and punitive damages. Although several of these points are framed in terms which attack the sufficiency of the evidence to support *submission* of the issues, no argument whatsoever is advanced on this point by BFS in its brief. Appellate briefing rules provide "[i]n civil cases, complaints that the evidence is legally or factually insufficient to support a particular issue or finding may be combined ... *if* the record references and the argument under the point sufficiently direct the court's attention to the nature of the complaint made...." Rule 74(d), Tex.R.App.P. Additionally, Rule 74(f) provides that the brief of the argument "*shall* include: (1) a fair, condensed statement of the facts pertinent to such points, with reference to the pages in the record where the same may be found; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." Rule 74(f), Tex.R.App.P. We therefore decline to consider those points attacking the submission of issues nos. 8, 8a, and 9 which were not briefed by BFS.

As to the sufficiency of the evidence to support the jury's answers to issues 3, 4, 6, 8, 8a and 9, in reviewing this challenge, we must consider and weigh all the evidence both in support of and contrary to the findings. Each finding must be upheld unless we find that the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

■ A review of the record in this case reveals no lack of evidence in support of the jury's findings. BFS, through the testimony of several of its employees, admitted altering and paying the check. It also presented its position that this act was a "business decision" made to protect the customer. The other defense raised was BFS's contention that the stop order was

not valid because it incorrectly flagged check no. 398 rather than no. 399. In response to this testimony, Kotrla presented an expert witness whose testimony was that, in his expert opinion, the stop order was valid. The expert, whose testimony was uncontroverted, stated that a valid stop order must give the account number, the amount of the check and the date the check was written. He pointed out that only about 65% of the checks in this country have serial numbers and for this reason the serial number is not an absolute requirement for a valid stop payment order. He further stated that altering a check is illegal and that it is not a commercially reasonable banking practice for a banking institution to alter a check without the express authority of its customer. Thus the jury was fully aware of the conduct of both parties throughout the transaction in question and made its determinations accordingly as is its proper function.

■ So far as the gross negligence issue is concerned, the questions of conscious indifference and heedless and reckless disregard for the rights of another are questions of fact for the trier of fact. With the evidence detailed above in the record, the jury assessed the conduct of BFS and found gross negligence. We have no authority to disregard a finding which is supported by the evidence. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego v. Brannon,* 682 S.W.2d 677, 680 (Tex.Civ.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). BFS's points of error nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 15 and 17 are overruled.

■ BFS next groups points 14 and 18, complaining that special issue no. 6 was a "double submission" which should have been submitted as two issues. It also alleges that this issue allowed the jury to speculate. BFS's complaint centers on the fact that special issue six asked the jury whether "the *conduct* of BFS was a proximate cause of the damages, if any, to Johnnie and Beverly Kotrla." (Emphasis ours.) Special issue no. 1a inquired whether BFS

breached its contract with the Kotrlas. Special issue 2 inquired whether BFS altered the check. Issue 3 inquired whether alteration of the check was negligence. Issue no. 5 asked whether BFS negligently failed to honor the stop payment order which the jury found in Issue no. 4 to be valid. Because there were separate contractual and negligence theories plead by the Kotrlas, BFS believes that separate causation issues should have been presented.

The jury found that BFS was negligent and breached its contract with Kotrla in altering the check and paying it over a valid stop order. These same acts of alteration and payment constituted a breach of contract *and* negligence on the part of BFS. *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (Tex.1947). Therefore, the "conduct" inquired about in issue no. 6 involved a single transaction rather than several separate and distinct acts. For this reason it was not improper to submit a single causation issue. Furthermore, had there been error in such a "double submission", it was waived by the failure of BFS to object to the issue and distinctly point out this basis for its objection. Rule 274. Tex.R.Civ.P. Point of error no. 14 is overruled.

■ BFS has failed to brief its point of error no. 18 which claims that the trial court erred in entering judgment for plaintiffs for monetary damages and for attorney's fees as there was no affirmative finding by the jury that any negligence was a proximate cause of Kotrla's damages. In light of our holding regarding point 14, we also overrule this point of error.

■ BFS next submits argument on point of error no. 27 that it was reversible error to submit the damage issues, issues nos. 7 and 9, without any guidelines for the jury to use in establishing the amount of damages. BFS would have us believe that the evidence, as submitted in this case, offered no limitations on what the jury could consider in determining the plaintiffs' damages. However, BFS then fails to indicate any damages awarded which were not recoverable or which were unsupported by

the evidence. BFS also neglects to cite us to any place in the record which would suggest that such a result might have occurred. On the other hand, appellee correctly points out that the amount of the check which was wrongfully paid was a liquidated sum not requiring any "guidelines" for determination and an instruction on punitive damages was included to give guidance to the jury in that area. Finally, any objection to issues 9 and 10 on the grounds raised in point 27 was waived by appellant's failure to object and specifically point out the claimed defect. Point of error 27 is overruled.

In point of error 28, BFS complains that the jury's answer to special issue no. 15 was against the great weight and preponderance of the evidence. That issue inquired whether BFS was entitled to any offset and credit. The jury found that it was not. What BFS neglects to tell us in its brief is that the final judgment signed by the court granted BFS the relief it sought by ordering the Kotrlas to assign to BFS all their right title and interest in the timeshare they "purchased" by virtue of the wrongfully paid check. Point 28 is therefore moot.

Similarly, BFS complains in point of error 29 that it is entitled to a new trial under Rule 50(e) of the Texas Rules of Appellate Procedure because the written copies of its requested special issues and instructions which were denied by the trial court were lost. Under Rule 50(e) "When the record or any portion thereof is lost or destroyed it may be substituted in the trial court and when so substituted the record may be prepared and transmitted to the appellate court as in other cases." According to the record before us, the trial court held a post trial and post appeal hearing pursuant to the order of this court at which time the missing issues and instructions were stipulated to by the parties. These issues were then submitted to this court and are currently a part of the record on appeal. Therefore, Rule 50(e) was complied with and appellant has suffered no prejudice. Point of error 29 is overruled.

BFS presents points 19, 20, 21, 22, 23, 24 and 25 in a group, complaining that the trial court erred in refusing to submit to the jury BFS's offered issues on comparative negligence and estoppel as well as its offered instructions on gross negligence and punitive damages. The question of Mrs. Kotrla's alleged negligence in putting the wrong check number on the stop payment order was properly disposed of by special issue no. 4 in answer to which the jury found that the stop order was valid. The Kotrla's election not to pursue the Landing at Seven Coves was dealt with in special issue no. 12 in answer to which the jury found no failure on the plaintiffs' part. Issues 13 and 14, predicated on an affirmative answer to issue 12 and dealing with comparative negligence, were presented to the jury but appropriately not answered by them because they were conditioned on an affirmative answer to no. 12. Furthermore, the failure of the Kotrlas to look to the Landing at Seven Coves for a remedy has absolutely no relevance to the valid cause of action which they had against BFS for altering and paying their check. Finally, BFS contends that the Kotrlas negligently contributed to their own damages by creating an "nsf" situation by transferring $7,800 from their checking account to their money market account. There is absolutely no evidence in the record to support this contention. The only testimony was that the transfer was made to take advantage of the higher rates paid on money market accounts. Because of the absolute assurances of BFS's employees that the stop payment order was timely, plaintiff had no reason to anticipate that the check would be run through the account after her transfer of funds. Points of error 19, 20, 21, 22, 23, 24 and 25 are overruled.

Finally, in points of error 1, 2, 3, 4 and 26, BFS alleges that it was prevented from presenting evidence regarding its defenses of estoppel, negligence and its claim of offset and credit. These arguments have been discussed earlier in our opinion in connection with other points of error and previously overruled. Our reasoning applies here as well. In response to the new-

ly raised complaint that two exhibits, namely some notes written by the Kotrlas regarding the time share transaction, were at first admitted and then withdrawn by the court, we would repeat our holding that evidence of the transaction between the Kotrlas and the Landing at Seven Coves was totally irrelevant and immaterial to their suit against Benjamin Franklin Savings. Therefore, exclusion of the exhibit was proper. If any complaint were to be valid, it would be a complaint by the plaintiff that three members of the jury were exposed to this inadmissible evidence. Points of error 1, 2, 3, 4 and 26 are overruled.

■ We now address the Kotrlas cross-point of error that the trial court erred in denying appellees' motion for entry of judgment which provided for an award of prejudgment interest on appellees' actual damages. Appellees' motion for judgment on the verdict, filed November 19, 1986, included an award of prejudgment interest on the amount of plaintiffs' actual damages to be calculated at the rate of six percent from September 7, 1984 until the date of judgment. The trial court refused the prejudgment interest award and the final judgment signed on December 15, 1986, omitted this award. Appellees correctly complain that prejudgment interest is recoverable as a matter of right where an ascertainable sum of money is determined to have been due and payable at a date certain prior to judgment. *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, 578 S.W.2d 109, 116 (Tex.1978). A plaintiff seeking prejudgment interest at common law as an element of damages must plead for it. *Id.* at 117. This principal has been unaffected by recent developments in the law regarding prejudgment interest. *Benavidez v. Isles Construction Company*, 726 S.W.2d 23, 25 (Tex.1987). Thus, if properly plead for, prejudgment interest was recoverable by the Kotrlas as a matter of right.

■ The Kotrlas included in their first amended original petition a prayer for "The sum of eight thousand and no/100 dollars ($8,000.00), *with interest at the legal rate*

*from August 7, 1984, until judgment."* This is sufficient pleading to support an award of prejudgment interest. *Black Lake Pipe Line Company v. Union Construction Company*, 538 S.W.2d 80, 96 (Tex.1976).

■ Appellant contends, however, that this point of error was waived by appellees' failure to object to the trial court's judgment. It is appellant's position that appellees' motion for entry of judgment was insufficient to preserve the complaint. Case law distinguishes between the requirements to preserve error imposed upon an appellee who is satisfied with the judgment and those imposed upon a party who is dissatisfied and must protect his right to bring an appeal. In *Brownstone Park Ltd. v. Southern Union Gas Company*, 537 S.W.2d 270 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.), on motion for rehearing the court reconsidered and reversed its refusal to address appellee's cross-points on grounds that error was not properly preserved below. In taking this action, the court said, "... appellee correctly contends that this court erred in not considering its cross-points because appellee did not file a motion for new trial or complain of the jury findings or judgment in the trial court. Rule 324, Texas Rules of Civil Procedure, requires such complaint only when a party objects to the judgment. Since the judgment was favorable to appellee, it had no reason to object." *Brownstone Park* at 273. Appellees presented to the trial court a motion for entry of judgment and a judgment which included the award of prejudgment interest prayed for by them. We hold that this act of formally requesting the relief sought and the subsequent denial of that relief by the trial court was sufficient to preserve appellees' error. Appellees are entitled to prejudgment interest on their actual damages of $8,000 at the rate of six percent from September 7, 1984 to the date of the judgment, December 15, 1986. Upon determination of error in the judgment of the trial court, this court may render that judgment which should have been rendered below. Rule 80, Tex.R. App.P.

Accordingly, the judgment of the trial court is reformed to include an award to appellees of prejudgment interest on $8,000 at the rate of six percent from September 7, 1984 to December 15, 1986. As reformed, the judgment is affirmed.