**Joyce ELLIOTT, Appellant,**

v.

**KRAFT FOODS NORTH AMERICA, INC., Appellee.**

**No. 14–02–00243–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 24, 2003.

Rehearing Overruled Nov. 13, 2003.

David Petersen, Houston, for appellant.

Alex E. Cosculluela, Laura Denise Shelton, Houston, for appellee.

Panel consists of Justices YATES, HUDSON, and FROST.

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

Appellant, Joyce Elliott, brought suit against Kraft Foods North America, Inc., alleging various causes of action arising from her biting onto a hard object in cereal manufactured by Kraft. In its final judgment, the trial court awarded Elliott actual damages, but not attorney's fees. In two points of error, Elliott argues (1) the trial court abused its discretion by failing to award Elliott her attorney's fees for breach of an implied warranty under the Texas Deceptive Trade Practices Act (DTPA) because Elliott presented conclusive evidence that Kraft breached an implied warranty of merchantability and (2) harmful error resulted from the trial court's failure .to file findings of fact and conclusions of law. We affirm the trial court's judgment in part and reverse and remand in part for the determination of the amount of attorney's fees to which Elliott is entitled.

### Factual and Procedural Background

Elliott pleaded causes of action against Kraft for breach of common-law implied warranties of merchantability and fitness for a particular purpose, breach of express warranty, strict products liability under section 402A of the Restatement (Second) of Torts, and violations of the DTPA. Elliott sought recovery of attorney's fees under the DTPA. The case was tried to the court on February 13, 2002, and at the conclusion of trial, the court announced its verdict for Elliott in the amount of $5,000, plus the costs of court. Elliott sought entry of judgment on February 20, 2002.[1] Elliott's proposed judgment included an award of attorney's fees. The trial court entered its final judgment, awarding Elliott $5,000 in actual damages, as well as costs of court and prejudgment and post-judgment interest. The judgment does

---

1. Although Elliott apparently requested that her motion for entry of judgment be included as part of a supplemental clerk's record in this case, the motion is not part of the record. Elliott's proposed final judgment is in the supplemental clerk's record.

not include an award of attorney's fees, nor does it state the basis of Kraft's liability.

Elliott timely filed a request that the court file findings of fact and conclusions of law. *See* Tex.R. Civ. P. 296.[2] Kraft also filed a request for findings, along with its proposed findings of fact and conclusions of law. Both parties timely filed notices of past due findings of fact and conclusions of law. *See* Tex.R. Civ. P. 297. This appeal was set for submission to this Court on December 12, 2002. On that date, this Court issued an abatement order pursuant to rule 44 of the Texas Rules of Appellate Procedure, requesting that the trial court file findings of fact and conclusions of law, and include such findings of fact and conclusions of law, along with any amendments timely requested by the parties, in a supplemental clerk's record on or before February 21, 2003. The trial court did not comply with this Court's order, and on February 27, the clerk of this Court sent a reminder letter to the trial court repeating the request that it file findings of fact and conclusions of law. Our clerk's office also made more than one telephone call to the trial court making the same request. Despite this Court's order and reminder and the repeated attempts of the parties to secure the findings of fact and conclusions of law to which they are entitled, the trial court has failed to file findings of fact and conclusions of law. We reinstated this appeal at the request of appellant.

## Analysis

### A. Trial Court's Failure to File Requested Findings of Fact and Conclusions of Law

■ In her second point of error, Elliott complains that the trial court's failure to

file findings of fact and conclusions of law resulted in harmful error, and requests that this Court reverse this matter and order the trial court to file findings of fact and conclusions of law.

■ When properly requested, a trial court has a mandatory duty to file findings of fact. *See, e.g., Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex. 1989). We abated this appeal and requested the trial court to file findings of fact and conclusions of law. *See* Tex.R.App. P. 44.4(b) (providing that court of appeals must direct trial court to correct remediable error and must not reverse a judgment because of a trial court's failure to act if the trial court can correct the omission). Without any explanation, the trial court did not do so. If a trial court does not file findings, it is presumed harmful unless the record affirmatively shows that the appellant suffered no harm. *See, e.g., Tenery v. Tenery,* 932 S.W.2d 29, 30 (Tex.1996); *Cherne Indus.,* 763 S.W.2d at 772. Generally, in complicated cases with disputed facts with two or more grounds for recovery or defense, the inference of harm cannot be defeated. *Randall v. Jennings,* 788 S.W.2d 931, 932 (Tex.App.-Houston [14th Dist.] 1990, no writ). If, however, the lack of findings is harmless, we can affirm. *See* Tex.R.App. P. 44.1(a). Error is harmful if it prevents a party from properly presenting a case to the appellate court. *See* Tex.R.App. P. 44.1(a)(2); *Tenery,* 932 S.W.2d at 30. The controlling issue is whether the circumstances of the particular case would require an appellant to guess at the reasons for the trial court's decision. *Goggins v. Leo,* 849 S.W.2d 373,

---

**2.** Only Elliott's "First Amended Proposed Findings of Facts and Conclusions of Law," filed on February 27, 2002, is in the clerk's record. Presumably, an earlier set of pro- posed findings of fact and conclusions of law were filed, but they are not in the clerk's record or supplemental clerk's record.

379 (Tex.App.-Houston [14th Dist.] 1993, no writ).

Although we do not condone the trial court's disregard for this Court's order and ignorance of its mandatory duty to file findings of fact and conclusions of law when properly requested, we conclude that the lack of findings was harmless in this case. Elliott was able to properly present the issues on appeal, and this Court is able to address and decide appellant's first point of error. *See Texas Dep't of Pub. Safety v. Woods,* 68 S.W.3d 179, 184 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (stating that because court was able to sustain appellant's second issue on legal sufficiency grounds, record affirmatively reflected that appellant was not harmed by trial court's failure to file findings of fact and conclusions of law); *see also, e.g., Birnbaum v. Alliance of Am. Insurers,* 994 S.W.2d 766, 784 n. 27 (Tex.App.-Austin 1999, pet. denied) (reasoning that party who briefed and identified theories by which trial court might have arrived at its ruling was not harmed by court's failure to file findings of fact and conclusions of law). Accordingly, we overrule Elliott's second point of error.

## B. Trial Court's Refusal to Award Attorney's Fees

■ In her first point of error, Elliott argues that she is entitled to attorney's fees under the DTPA because she prevailed on her claims for breach of express warranty and breach of the implied warranties of merchantability and fitness for a particular purpose. As a threshold matter, we respond to Kraft's contention that Elliott waived her first point of error.

Elliott made a request for attorney's fees during the trial, and the trial court sought clarification as to which claim formed the basis of that request and noted on the record the response by Elliott's counsel. Furthermore, Elliott's proposed final judgment includes an award of attorney's fees. The trial court's final judgment does not include such an award. Elliott properly preserved her complaint. *See* TEX.R.APP. P. 33.1(a); *see also, e.g., Emerson v. Tunnell,* 793 S.W.2d 947, 947–48 (Tex.1990) (ruling that prevailing party's request for judgment for recovery based on quantum meruit theory was preserved for appeal when trial court entered judgment for lesser amount); *Benjamin Franklin Sav. Ass'n v. Kotrla,* 751 S.W.2d 218, 224 (Tex.App.-Houston [14th Dist.] 1988, no writ) (concluding that appellee's right to complain about denial of prejudgment interest in final judgment was preserved by appellee's motion for entry of judgment and proposed judgment which contained award of prejudgment interest).

■ Turning to the issue of whether Elliott is entitled to attorney's fees, we review a trial court's decision of whether to award attorney's fees for abuse of discretion. *See Hunt v. Baldwin,* 68 S.W.3d 117, 135 n. 8 (Tex.App.-Houston [14th Dist.] 2001, no pet.). To determine whether the trial court abused its discretion, we must determine whether the trial court acted in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *See Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986). To determine if the trial court abused its discretion in refusing to award Elliott attorney's fees, we must first conduct a review of the evidence to determine whether Elliott presented legally sufficient evidence of breach of warranty under the DTPA.

It is not necessary for this Court to determine whether Elliott prevailed at trial on all of her claims for breach of warranty or on her claim for strict liability. The only question we must decide is whether Elliott prevailed on any claim entitling her to attorney's fees. It is undis-

puted that Elliott can recover attorney's fees only if she prevailed under the DTPA. We thus initially decide only whether Elliott presented legally sufficient evidence of breach of an implied warranty of merchantability, and, if we answer in the affirmative, whether Elliott is entitled to attorney's fees under section 17.50 of the DTPA. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.50(b) (Vernon 2002).

The trial court's failure to file findings of fact and conclusions of law, despite this Court's order that it do so and despite the parties' repeated requests, makes our review somewhat awkward. In a case such as this, when the parties properly requested findings but they were not filed by the trial court, an appellate court is not required to imply all necessary findings in support of the trial court's judgment. *See generally* Tex.R. Civ. P. 299; *see also Nat'l Commerce Bank v. Stiehl,* 866 S.W.2d 706, 707 (Tex.App.-Houston [1st Dist.] 1993, no writ) (stating that appellate court could not presume findings to support trial court's judgment when party requested additional, omitted and amended findings on ultimate issues raised by pleadings and evidence and necessary to understand trial court's judgment). The proper remedy for a trial court's refusal to file findings of fact and conclusions of law is abatement of an appeal, thereby giving the trial court an opportunity to cure its error. The trial court in this case, however, failed to cure despite our abatement order. Thus, to conduct a review of the evidence to determine if Elliott prevailed on her claim for breach of an implied warranty of merchantability, we must presume that the trial court found to the contrary, as implied by its judgment, which does not award Elliott attorney's fees.

In reviewing a trial court's findings of fact for legal and factual sufficiency, we apply the same standards that we apply in reviewing jury findings. *Johnston v. McKinney American, Inc.,* 9 S.W.3d 271, 276 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). Elliott essentially attacks an adverse finding by the trial court on an issue for which she had the burden of proof. Because of this, we first must examine the record for evidence that supports the trial judge's finding, while ignoring all evidence to the contrary. *Id.* at 278. " 'Second, if there is no evidence to support the fact finder's answer, then, the entire record must be examined to see if the contrary proposition is established as a matter of law.' " *Id.* (quoting *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989)).

To recover under the DTPA on a breach of warranty, a plaintiff must show (1) consumer status, (2) existence of the warranty, (3) breach of the warranty, and (4) the breach was a producing cause of damages. *See generally, e.g., Johnston,* 9 S.W.3d at 282; *see* Tex. Bus. & Com.Code Ann. § 17.50(a) (Vernon 2002). The DTPA does not create warranties; rather, they must be established independently of the act. *McDade v. Texas Commerce Bank, Nat'l Ass'n,* 822 S.W.2d 713, 718 (Tex. App.-Houston [1st Dist.] 1991, writ denied). The implied warranty of merchantability applies in every contract for goods, unless specifically bargained out of the agreement. *See* Tex. Bus. & Com.Code Ann. § 2.314(a) (Vernon 1994). The serving for value of food to be consumed elsewhere is a sale of goods. *Id.* The implied warranty of merchantability provides that the product is fit for its ordinary purposes. *See, e.g., Church & Dwight Co., Inc. v. Huey,* 961 S.W.2d 560, 569 (Tex.App.-San Antonio 1997, pet. denied). To a show a breach of the warranty, a plaintiff must demonstrate both that the goods are not fit and that "they suffer from a defect rendering them unfit 'because of a lack of something neces-

sary for adequacy.' " *Id.* (citing *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 443–44 (Tex.1989)); *see also, e.g., Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678, 688 (Tex.App.-Dallas 2000, no pet.) (concluding that evidence of hard object in cookie supported jury finding that cookie dough was unfit for its ordinary purpose because it lacked something necessary for adequacy, "namely, the absence of concealed, hard objects capable of injuring a consumer").

 Strict liability for a manufacturing defect and breach of an implied warranty of merchantability are two separate causes of action. *See Otis Spunkmeyer, Inc.*, 30 S.W.3d at 690 (citation omitted). However, "depending on the facts of each case, whether a manufacturing defect exists for purposes of products liability often resolves whether a product was defective and, therefore, breached an implied warranty of merchantability." *Id.* (citing *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 666 (Tex.1999)). Where the defect alleged is the same for purposes of both a strict liability claim and a breach of an implied warranty claim, the defect for both claims can be functionally identical. *Id.* (concluding that " 'defect' " in cookie at issue in claims for strict liability and breach of an implied warranty of merchantability were functionally identical). Also, the proximate causation element of a strict liability claim "subsumes within it the concept of producing cause ('but for' cause)." *Id.* at 691. "An act or defect that is not a producing cause cannot, as a matter of law, constitute a proximate cause." *Id.* The converse is the same; if the defect alleged was a proximate cause of the occurrence at issue, then, as a matter of law, it was a producing cause of the occurrence.

Elliott testified that she purchased Grape Nuts cereal manufactured by Kraft. She testified that she bit into a hard, foreign substance in the cereal and that, as a result of biting into that hard substance, she developed problems with her tooth and had to have surgery and other medical or dental treatment to repair the tooth. Elliott also testified that she mailed Kraft samples of the foreign material, rocks, in the cereal she purchased and attempted to eat. Kraft's counsel asked some questions of Elliott and Kraft's witness that were directed to the issue of Elliott's credibility, whether she had pre-existing medical conditions, and whether the rocks supplied by Elliott to Kraft were actually in the cereal she ate. The testimony of Kraft's trial witness, Demika Carlswell, reveals that she doubted Elliott's story. Carlswell testified that rocks had been found in the Grape Nuts cereal on prior occasions, but she opined that on the particular occasion at issue, the rocks (three in the sample) sent by Elliott did not necessarily come from the box of Kraft cereal purchased by Elliott.

 As we previously noted, the record does not reveal the basis for the trial court's judgment against Kraft. Nonetheless, the judgment against Kraft necessarily implies that the trial court found there was a rock in the cereal, the rock was in the cereal due to no fault of Elliott, and the rock caused injury to Elliott. Based on our review of the record for evidence that supports the trial court's finding, while ignoring all evidence to the contrary, we find there is no evidence to support the trial court's implied finding that Kraft did not breach an implied warranty of merchantability or that this breach was not a producing cause of Elliott's damages.

We next must determine if the contrary proposition is established as a matter of law. Kraft sent Elliott a letter shortly after the incident, and wrote that it had identified a rock in the samples Elliott

provided and said that the foreign material got into Kraft's cereal, despite extensive quality control procedures. Elliott's dental provider, who was qualified by the trial court as an expert, testified that Elliott's tooth was injured and that he believed Elliott's statement that she had bit into a hard, foreign substance in the cereal at issue. Carlswell tried to diminish the import of Kraft's statements in the letter it sent to Elliott by saying that Kraft wrote that explanation to Elliott based solely on its analysis of the sample Elliott sent to Kraft. Carlswell, however, testified that if rocks were in Kraft's cereal, the cereal would not be wholesome.

 Based on our review of the entire record, there is conclusive evidence of the existence of an implied warranty of merchantability in the transaction at issue and breach of that warranty. *See generally Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 444 (Tex.1989) (stating that plaintiff in a breach of an implied warranty of merchantability case must prove that goods were defective when they left the manufacturer's or seller's possession and "were unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy, *i.e.,* because of a defect"). Even assuming that the trial court found liability only on Elliott's strict liability claim, any finding by the trial court that there was no breach of an implied warranty of merchantability is entirely inconsistent with the court's award of damages to Elliott. *See generally Blakely,* 30 S.W.3d at 690 (concluding that jury's inconsistent causation findings—manufacturing defect was not a producing cause of the occurrence but breach of warranty was a proximate cause of the occurrence—were in fatal conflict). We have determined that Elliott proved breach of an implied warranty of merchantability as a matter of law.

 In light of our conclusion that Elliott proved breach of an implied warranty of merchantability, we must determine if Elliott presented conclusive evidence of the other elements necessary to recover under the DTPA. As noted above, a consumer may recover under the DTPA for breach of an implied warranty that is a producing cause of economic damages or mental anguish. Tex. Bus. & Com.Code Ann. § 17.50(a) (Vernon 2002). There is no evidence to support an implied finding in this case that Elliott was not a consumer. To the contrary, the entire record supports a finding that Elliott presented conclusive evidence of her status as a consumer under the DTPA. *See, e.g., Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351–52 (Tex.1987) (stating requirements to establish DTPA consumer status: (1) plaintiff sought or acquired goods or services by purchase or lease and (2) goods or services purchased or leased form basis of the complaint). As discussed in the foregoing paragraph, Elliott presented conclusive evidence of the existence of and breach of an implied warranty of merchantability. Furthermore, there is no evidence to support an implied finding that the breach of the implied warranty of merchantability was not a producing cause of Elliott's actual damages. " 'A producing cause is a substantial factor which brings about the injury and without which the injury would not have occurred.'" *Johnston,* 9 S.W.3d at 283 (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 481 (Tex.1995)). A plaintiff alleging a claim under the DTPA is required to show only producing cause and not that the harm was foreseeable. *Id.* In this case, the record conclusively demonstrates that the breach of warranty was a producing cause of Elliott's damages, as evidenced by the trial court's award of actual damages.

■ In summary, Elliott prevailed on one of her claims brought under the DTPA. A consumer prevailing under section 17.50 of the DTPA is entitled to reasonable and necessary attorney's fees. TEX. BUS. & COM.CODE ANN. § 17.50(b) (Vernon 2002). Thus, the trial court abused its discretion by not awarding Elliott any attorney's fees. We sustain Elliott's first point of error.

■ A claim for attorney's fees is severable, and we therefore have the discretion to reverse and remand the trial court's judgment in part. *See, e.g., ASAI v. Vanco Insulation Abatement, Inc.,* 932 S.W.2d 118, 124 (Tex.App.-El Paso 1996, no writ) (stating that appellate courts may sever and reverse and remand claims for attorney's fees). The reasonableness of attorney's fees is a fact question that must be determined by the trier of fact. *See, e.g., Nat'l Bugmobiles, Inc. v. Jobi Properties,* 773 S.W.2d 616, 623 (Tex.App.-Corpus Christi 1989, writ denied) (reversing and remanding cause to trial court to determine amount of reasonable and necessary attorney's fees to be awarded to appellee as prevailing party on DTPA claim).

Accordingly, we reverse the trial court's judgment in part because of our conclusion that Elliott prevailed on a claim brought under the DTPA for breach of an implied warranty of merchantability, and remand this matter to the trial court to determine the amount of attorney's fees to which appellant is entitled. We affirm the remainder of the trial court's judgment.

J. HARVEY HUDSON, J., concurring.

J. HARVEY HUDSON, Justice, concurring.

The trial judge did not make written findings of fact and conclusions of law as ordered by this court. Whether the judge's conduct was deliberate or merely inadvertent cannot be determined from the record before us.

The press of business, particularly in a busy, urban trial court, is daunting. Thus, the trial judge's failure to make findings of fact may have been unintentional. However, as the majority opinion makes clear, the circumstances surrounding the trial judge's inaction, in the face of repeated requests, suggests his conduct may have been a deliberate refusal, as opposed to a negligent failure. In any event, because the trial judge did not make findings of fact, this court was forced to conduct an otherwise unnecessary harm analysis regarding the absence of written findings of fact, and, as the majority notes, this absence "makes our review [of the appellate issues] somewhat awkward."

The violation of a court's order is an issue of contempt. *In re Acceptance Ins.,* 33 S.W.3d 443, 449 (Tex.App.-Fort Worth 2000, orig. proceeding). The power to punish a party who fails or refuses to obey an order or decree of the court is an inherent power of a court and is an essential element of judicial independence and authority. *In re Reed,* 901 S.W.2d 604, 611 (Tex.App.-San Antonio 1995, orig. proceeding). If the trial judge intentionally refused to comply with our order, such an act tends to bring this court into disrespect. *Id.* at 612. It is the duty of this court to give the trial judge an opportunity to explain his actions, and if it should become apparent, after a hearing, that he acted intentionally and contemptuously, to punish him accordingly. *Id.* For these reasons, the court should schedule a show cause hearing to determine the issue.

While I concur in the majority's disposition of appellant's points of error, I first would have determined the underlying issue regarding the reasons for the want of written findings and conclusions. With

these observations, I concur in this court's judgment.