# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00749-CV

**Tina Marie Fox, Appellant**

**v.**

**Troy Ben Fox, Appellee**

## FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
## NO. 21,584, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Tina Marie Fox appeals two issues pertaining to the final decree of divorce from her marriage to appellee Troy Fox.[1] After issuing the divorce decree,[2] the district court ordered that Tina and Troy's daughter M.F. attend St. Peter's Lutheran School in Marble Falls for the 2004-05 school year, and that her primary residence be restricted to Burnet County. The district court also

---

[1] For ease of reference, we will refer to the parties by their first names.

[2] The divorce decree was issued in July 2004 and was entitled "Final Decree of Divorce on Property Issues." We will refer to the decree as the "initial decree." Earlier the district court had issued an order concerning conservatorship and support of the child. In that order, the district court specifically stated that any geographic restriction on the residence of the child would be addressed at a later time. The initial decree explicitly incorporated the order concerning conservatorship of the child.

ordered that the portions of the initial decree addressing the couple's tax liabilities for prior years and child support obligations be corrected and modified. After the district court issued these orders, Tina requested findings of fact and conclusions of law. The district court denied her request, finding that it was not timely filed.

In her first and second issues on appeal, Tina contends that the district court erred by (1) failing to issue findings of fact and conclusions of law and (2) finding her request for findings of fact and conclusions of law untimely. In her third, fourth, and fifth issues, Tina insists that the district court abused its discretion by ordering that: (3) M.F.'s residence be restricted to Burnet County; (4) M.F. attend St. Peter's Lutheran School for the 2004-05 school year; and (5) certain portions of the initial decree be corrected and modified. Because we hold that Tina was not harmed by the district court's failure to issue findings of fact and conclusions of law and that the district court did not abuse its discretion by issuing the post-initial decree orders, we affirm in part. However, we also reverse and remand in part because we hold that no substantive or probative evidence exists that would support the court's restriction of the child's residence to Burnet County beyond the school year 2004-05.

**BACKGROUND**

Tina and Troy were married in August 1995. Tina worked in automotive sales and also ran a nail salon. Troy owned and operated pawn shops in Marble Falls, Taylor, and Belton. Tina had a ten-year-old son, Anthony, from a prior relationship; Troy had no children. Tina, Troy and Anthony lived together in Burnet County throughout the marriage. Tina has no family in Burnet

2

County. Her two sisters live in Belton and Killeen; her mother lives in West Virginia. Troy grew up in Burnet County; his parents, two siblings, and several nieces and nephews, still reside there. After M.F. was born in 1998, the couple agreed that Tina would stop working to stay home with the children.

Troy filed for divorce in April 2002. In June 2004, the district court issued its "final order" concerning conservatorship of M.F. Tina and Troy were appointed joint managing conservators, with Tina having the exclusive right to establish M.F.'s primary residence. The court stated that a possible geographic restriction would be addressed at a later date. Trial on all unresolved issues was set for July. On the day before trial, Tina and Troy entered into a Rule 11 agreement that addressed community property issues, as well as child support. The agreement specifically stated that any issues pertaining to a geographical restriction or choice of schools for M.F. in 2004-05 would either be addressed in a separate agreement or be decided by the court. At the hearing, Tina insisted that it would be in M.F.'s best interest to allow her to move to nearby Lakeway[3] and attend public school there. Troy wanted to restrict her residence to Burnet County. When the couple could not agree, a hearing was held on July 22, 2004. At the close of the hearing the district judge announced that it was in M.F.'s best interest to remain in Burnet County and return to her same school for the first grade in Fall 2004. A written order imposing this geographic restriction was filed on August 28.

---

[3] Lakeway, Texas, is a small community approximately thirty-five miles from the Marble Falls area, which is where Tina and M.F. lived at the time of the divorce.

The district court signed the initial decree of divorce on July 26, 2004. It addressed the couple's federal income tax liability for prior years and the year of divorce. The initial decree stated, "In the event that there is a refund for prior years, the parties shall split the refund." This decree also included this statement addressing income tax liability in the year of divorce: "Troy Fox shall be entitled to any taxes prepaid on behalf of Troy Fox individually or on behalf of the Pawn Shops, Tina Fox is ordered to sign any documents necessary to implement this agreement." Although the Rule 11 agreement indicated that Troy would pay $1,200 a month in child support, the initial decree failed to impose this child support obligation.

On August 17, Troy filed a motion seeking to reform, clarify, and correct certain property issues in the initial decree. In the alternative, Troy requested a new trial. Troy insisted that the provision entitling him to any prepaid income taxes in excess of the parties' tax liability was incorrectly placed in the section addressing taxes for the year of divorce, rather than taxes for prior years, as the parties had agreed. Likewise, he argued that the clause purporting to divide any tax refund from prior years was contrary to their agreement and was erroneously inserted in the decree by Tina's attorney. Troy argued that these mistakes rendered the decree in conflict with the parties' Rule 11 agreement, which was incorporated into the initial decree.

After a hearing on October 7, the district court modified the income tax provisions as Troy requested and added the child support obligations that had inadvertently been omitted from the initial decree. On October 13, Tina filed a request for findings of fact and conclusions of law concerning the geographic restriction and the correction and modification of the income tax

4

provisions. On October 29, the district court denied Tina's request, finding it untimely. This appeal followed.

## DISCUSSION

### Findings of fact and conclusions of law

In her first two issues, Tina suggests that the district court erred by finding untimely her request for findings of fact and conclusions of law. Rule 296 provides a party with the procedural right to request from the trial court written findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. The trial court's duty to make such findings and conclusions is mandatory when the request is timely. *See* Tex. R. Civ. P. 297; *see also Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989); *Glass v. Williamson*, 137 S.W.3d 114, 117-18 (Tex. App.—Houston [1st Dist.] 2004, no pet.). If a trial court does not file findings, it is presumed harmful unless the record affirmatively shows that the appellant suffered no harm. *See, e.g.*, *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *Cherne Indus., Inc.*, 763 S.W.2d at 772; *Glass*, 137 S.W.3d at 118.

Generally, in complicated cases with disputed facts, or with two or more grounds for recovery or defense, the inference of harm cannot be defeated. *Elliott v. Kraft Foods N. Am., Inc.*, 118 S.W.3d 50, 54 (Tex. App.—Houston [14th Dist.] 2003, no pet.). If, however, the lack of findings is harmless, we can affirm. *See* Tex. R. App. P. 44.1(a). Error is harmful if it prevents a party from properly presenting a case to the appellate court. *See* Tex. R. App. P. 44.1(a)(2); *Tenery*, 932 S.W.2d at 30; *Brazoria County v. Texas Comm'n on Envtl. Quality*, 128 S.W.3d 728, 744 n.10 (Tex. App.—Austin 2004, no pet.). A trial court's failure to issue findings of fact and conclusions of law will be considered harmful if, under the circumstances of the particular case, an appellant

5

would be required to guess the reason or reasons for the trial court's decision. *Brazoria County*, 128 S.W.3d at 744 n.10; *Elliott*, 118 S.W.3d at 54.

A judgment that actually disposes of all parties and all claims is final. *In re Burlington Coat Factory Warehouse*, 167 S.W.3d 827, 830 (Tex. 2005). In this case, the district court retained plenary jurisdiction to modify its initial decree, and there was not a final judgment until the district court issued its October 7, 2004 order modifying the initial decree. At that time, the district court resolved the parties' dispute regarding the income tax provisions and imposed the previously agreed upon child support obligation that had not been included in the initial decree. Therefore, the district court erred by finding Tina's October 13 request for findings of fact and conclusions of law untimely. *See* Tex. R. Civ. P. 296 (providing that requests for findings of fact and conclusions of law be filed within twenty days after judgment is signed).

Because Tina's request was timely, we must determine whether she was harmed by the lack of findings and conclusions. Troy argues that Tina does not have to guess the reasons behind the district court's orders pertaining to either its imposition of the geographic limitation or its decision to correct and modify the initial decree because the district judge, Murray Jordan, announced his rulings and stated his reasons at the hearings. We agree.

At the hearing on the residency restriction, Judge Jordan clearly stated that his main concern was to secure a stable environment for M.F. He acknowledged that for two years the divorce proceedings had been extremely stressful for a child her age. He explained that M.F. had attended St. Peter's Lutheran School in Burnet County for the prior two school years and had made friends there. He insisted that, if M.F. were older and better equipped to deal with the stress of a

6

move and a new school, his decision might have been different. He then stated that restricting her residence to Burnet County would make it easier for M.F. to continue in this same school. Therefore, he ordered M.F. to attend St. Peter's for the first grade (2004-05) and reside in Burnet County. He added, "It may be that a move to outside this area after a year would be appropriate."

At the hearing on Troy's motion to reform, clarify, and correct the judgment, Judge Jordan stated that there clearly were two mistakes made in drafting the decree, the income tax provisions and the omission of any child support obligation, both at odds with the parties' agreement. He suggested the mistakes were probably due to the fact that there was a hurried push to enter the initial decree the day after the Rule 11 agreement was signed. Because he found the provisions of the initial decree and the incorporated Rule 11 agreement ambiguous, he heard evidence pertaining to the parties' intentions. Subsequently, he asserted that the decree entered on July 26 did not accurately represent the parties' intentions.

The record clearly establishes the reasons underlying Judge Jordan's decisions in this case. Therefore, Tina was not harmed by the lack of written findings and conclusions of law.[4] Consequently, we overrule Tina's first two issues regarding the district court's failure to file written findings of fact and conclusions of law.

---

[4] We emphasize that oral comments from the bench are not substitutes for written findings of fact and conclusions of law. *See In re Jane Doe 10*, 78 S.W.3d 338, 340 n.2 (Tex. 2002); *Narvaez v. Maldonado*, 127 S.W.3d 313, 316 n.1 (Tex. App.—Austin 2004, no pet.). We rely on Judge Jordan's oral pronouncements solely for the purpose of conducting our harm analysis.

7

**Residence restriction**

In her third and fourth issues, Tina suggests that the district court abused its discretion when it ordered that M.F.'s primary residence be established solely within Burnet County and that M.F. attend St. Peter's Lutheran School for the 2004-05 school year. Tina maintains that the orders are not in the best interest of M.F., who should be allowed to move to Lakeway and enroll in its exemplary public schools. Tina claims that the move would improve both her and M.F.'s quality of life without diminishing Troy's relationship with M.F. In addition, Tina asserts that nearby Lakeway is closer to Troy and his family than other cities actually located within Burnet County.

The legislature has explicitly stated, "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002 (West 2002); *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). The trial court is given wide latitude in determining the best interests of the child and will be reversed only for an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005). As long as some evidence of a substantive and probative character exists to support the order, we will not substitute our judgment for that of the trial court. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

Family code section 153.001 states that the public policy of this state is to provide a safe, stable, and nonviolent environment for the child. Tex. Fam. Code Ann. § 153.001(a)(2)

(West 2002). The code is silent as to the specific factors that the trial court should consider when determining whether a residency restriction is in the best interest of the child. In *Lenz*, the supreme court provided some guidance in applying our state's best-interest standard when divorced parents seek to relocate. *See* 79 S.W.3d at 13-16. The court highlighted various relevant factors to be considered: the reasons for and against the move; the effect on extended family relationships; the effect on visitation and communication with the non-custodial parent to maintain a full and continuous relationship with the child; the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the non-custodial parent and child; the nature of the child's existing contact with both parents, and the child's age, community ties, and health and educational needs. *See id*. at 15-17. However, the supreme court clearly stated that suits affecting the parent-child relationship are intensely fact-driven and consequently involve careful balancing of these numerous factors. *Id*. at 18-19.

As we have noted, the district court's primary concern was to provide a secure and stable environment for M.F. The court heard testimony that M.F. had attended St. Peter's Lutheran School for two years and was excited about returning for the first grade. The record also indicates that many of M.F.'s extracurricular activities take place in Burnet County. In addition, there is evidence establishing that most of M.F.'s paternal extended family lives in Burnet County. Judge Jordan recognized that it was difficult for Tina to get along with Troy and his family and that it may not be in her best interest to remain in Burnet County. However, the record indicated that M.F. had been insulated from much of the familial acrimony.

9

Judge Jordan concluded that it would promote stability for M.F. to attend the first grade at St. Peter's:

> The child has attended St. Peter's Lutheran School for two years and made friends, and that the stability for the child will be for her to stay in St. Peter's Lutheran School at least for another year.
>
> The problem with establishing a home for the child in Lakeway would be if the child continues in St. Peter's School, she would have to be transported 35 miles to school each day. If she is closer to St. Peter's School, then it would be better for the child to be able to go to school in St. Peter's Lutheran School.
>
> So the Court feels that the best interest of the child is that she attend St. Peter's Lutheran School one more year, but that the home of the child be established in Burnet County. . . . And certainly as the circumstances change, the—we can change the order. But at this time, I'll rule that the residence of the child be established in Burnet County, and that she be placed in St. Peter's Lutheran School for the first grade.

The record before us includes evidence supporting Judge Jordan's conclusion that the stability of the child would be served by continuing to attend St. Peter's Lutheran School for the school year 2004-05, that changing the child's residence to Lakeway would impede school attendance at St. Peter's by adding 35 miles of transportation twice a day, and that restricting the child's residence to Burnet County would facilitate the goal of keeping her in the same school for another year. Therefore, we hold that the district court did not abuse its discretion by restricting M.F.'s primary residence to Burnet County to enable her to attend the first grade at St. Peter's. However, we find no substantive or probative evidence that would support the court's restriction of the child's residence to Burnet

10

County and its denial of the mother's request to move to Lakeway after that school year ended.[5] We hold that the court abused its discretion in continuing the restriction and denying the mother's request to allow the child to reside in the Lakeway community after the end of the 2004-05 school year. We sustain in part Tina's third and fourth issues.

**Modification and correction of the initial decree**

In her final issue, Tina argues that the district court abused its discretion by ordering that the initial decree be modified and corrected. Tina claims that the district court (1) erroneously admitted evidence of the couple's settlement negotiations; (2) improperly allowed Troy to renegotiate the corrected and modified initial decree; and (3) failed to divide income tax refunds from prior years in a just and right manner.

The district court signed and filed the initial decree on July 26, 2004. On August 17, Troy filed a motion seeking to reform, clarify, and correct certain portions of the initial decree. He argued that the portions of the initial decree pertaining to the couple's income tax liabilities were ambiguous because the Rule 11 agreement was not properly incorporated into the initial decree. On September 24, the district court held a hearing on Troy's motion. At the hearing, the district court heard testimony from Troy's attorney, Robert Gradel, and Gradel's secretary, Jennifer Bunting, that

---

[5] The record reflects that St. Peter's Lutheran School enrolls students from pre-kindergarten through second grade. M.F. would not be able to attend St. Peter's beyond the end of the school year 2005-06. The record does not reflect if M.F. is presently enrolled in the second grade at St. Peter's.

11

during the settlement negotiations Troy agreed to pay a portion of Tina's credit card debt in exchange for receiving any tax prepayments or overpayments. Gradel also offered into evidence copies of faxes that he sent to Tina's attorney, Glynn Turquand, pointing out this drafting error in the initial decree. In one fax, Gradel made three suggestions for language that he felt should be included in the decree. Gradel stated that two of the suggestions were adopted, but his request that the decree section entitled "*Liability for Federal Income Taxes for Prior Year*" include a sentence awarding Troy any refunds was not incorporated as requested.[6] Instead, substantially similar language was placed in the section entitled *Treatment/Allocation of Community Income for Year of Divorce*. Finally, Gradel testified that the sentence, "In the event that there is a refund for prior years, the parties shall split the refund," was contrary to the parties' agreement as reflected in the Rule 11 agreement. Turquand objected to the admission of Gradel's and Bunting's testimony, as well as the faxes. He claimed Texas Rule of Evidence 408 barred the admission of evidence of conduct or statements made during settlement negotiations. *See* Tex. R. Evid. 408. Turquand also argued that both the Rule 11 agreement and the initial decree were clear and unambiguous.

The district court found the initial decree and the Rule 11 agreement ambiguous and on October 7 it ordered that three sections of the initial decree be corrected or modified. First, the district court deleted the sentence splitting tax refunds for prior years between the parties. Second, it transferred the sentence granting Troy all prepayments of tax to the section concerning tax liability

---

[6] The requested insertion read: "Troy Fox shall be entitled to any taxes prepaid on behalf of Troy Fox individually or on behalf of the Pawn Shops, and Tina Fox is ordered to sign any documents necessary to implement this agreement."

for prior years.  Finally, the district court ordered that the initial decree be modified to include the previously agreed upon child support provision.[7]

### *Ambiguity*

Whether a divorce decree or an agreement is ambiguous is a question of law subject to *de novo* review.  *See Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003); *Guerrero v. Guerra*, 165 S.W.3d 778, 782 (Tex. App.—San Antonio 2004, no pet.).  We interpret a divorce decree like any other judgment, reading the decree as a whole and "effectuating the order in light of the literal language used" if that language is unambiguous.  *Reiss v. Reiss*, 118 S.W.3d 439, 441 (Tex. 2003) (quoting *Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex. 1997)).  A judgment is ambiguous if it is susceptible to more than one reasonable interpretation.  *Shanks*, 110 S.W.3d at 447.  If the decree is ambiguous, a court should review the record along with the decree to aid in interpreting the judgment.  *Id*.

After extensive negotiation, Tina and Troy entered into a Rule 11 agreement outlining how the marital property would be divided.  The substance of the agreement was to be included in the initial decree.  Specifically, the initial decree states, "The Court finds that the parties have entered into an Agreement Incident to Divorce, in a document separate from this Final Decree of Divorce.  The Court approves the agreement and incorporates it by reference as part of this decree as if it were recited herein verbatim and orders the parties to do all things necessary to effectuate the agreement."

---

[7] Neither party raises a complaint about the modification adding the child support obligation to the decree of divorce.

13

The only reference to the couple's income tax liabilities in the Rule 11 agreement is found in paragraph 8 which states, "For 2004, parties [Tina and Troy] will partition income, taxes will be as if divorced on January 1, 2004. Any tax prepayment or deficit will belong to Troy for pawn shops, his income."

In her response to Troy's motion, Tina contends that paragraph 8 addresses only the couple's tax liability for 2004. However, it is unclear whether the reference to 2004 in the first sentence also modifies the second sentence governing the treatment of tax prepayments and deficits. The second sentence could be read to mean any tax prepayment or deficit *in 2004*, or it could be read to mean *any* tax prepayment or deficit from *any* year. This distinction is critical because Troy insists that the word "prepayment" includes overpayments from prior years. Troy maintains that he should be allowed to apply all overpaid income taxes in 2003 to offset his 2004 tax liability. Tina would confine the second sentence in paragraph 8 to the year 2004 and rely on the unexplained insertion dividing tax refunds between the parties to claim one-half of the tax refund from 2003.

We conclude that the second sentence of paragraph 8 is ambiguous because it is susceptible to more than one reasonable interpretation. Therefore, if the parties intended to award *any* income tax prepayments or deficits to Troy, this is in direct conflict with the provision in the initial decree that any tax refund from a prior year be divided between the parties. Because the decree specifically incorporated the Rule 11 agreement, we conclude that the provisions of the decree that address federal income tax liabilities and refunds are ambiguous. *See Shanks*, 110 S.W.3d at 447. Therefore, the district court did not abuse its discretion by admitting evidence for the purpose of ascertaining the parties' intentions. *See National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907

14

S.W.2d 517, 520 (Tex. 1995); *EMC Mortgage Corp. v. Davis*, 167 S.W.3d 406, 413 (Tex. App.—Austin 2005, pet. filed).

### *Modification*

A trial court retains plenary power to vacate, modify, correct, or reform its judgment at any time until the judgment becomes final thirty days after it is signed. *See* Tex. R. Civ. P. 306a (time periods run from date judgment is signed), 329b (motions for new trial and motions to modify, correct, or reform judgment extend duration of trial court's plenary power); *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993); *In re Garza*, 153 S.W.3d 97, 102 (Tex. App.—San Antonio 2004, no pet.). Within this time period, the trial court's power to modify its judgment has been described as "practically unlimited" or "virtually absolute." *Rogers v. Clinton*, 794 S.W.2d 9, 12 (Tex. 1990) (Cook, J., dissenting); *Cook v. Cook*, 888 S.W.2d 130, 131 (Tex. App.—Corpus Christi 1994, no writ).

However, once a divorce decree becomes final it is beyond the power of the trial court to issue an order that modifies the division of property. Tex. Fam. Code Ann. § 9.007(b) (West 1998). Property adjudications in a divorce decree become final the same as other judgments relating to title and possession of property. *Harleaux v. Harleaux*, 154 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.). Here, the district court's plenary power had not expired at the time it signed the October 7 order modifying the initial decree. *See* Tex. R. Civ. P. 329b(a) (motion to modify shall be filed within thirty days after judgment is signed), 329b(c) (if motion to modify is not determined within seventy-five days after judgment was signed, it shall be considered overruled). Therefore,

15

the district court was authorized to modify the initial decree in accordance with the evidence of the parties' agreement. *See Cook*, 888 S.W.2d at 131.

The record includes testimony and evidence supporting the district court's modification of the initial decree. The modification is also supported by other non-disputed provisions of the initial decree. First, the parties agree that Troy is liable for any income tax deficit in all prior years. If Troy is liable for any prior income tax liability, it follows that he also be entitled to any tax refund or overpayment. Second, both the initial decree and the Rule 11 agreement explicitly state that community income generated in 2004, the year of divorce, shall be partitioned as if the couple were divorced on January 1, 2004. Under the partition agreement, Tina and Troy would file separate income tax returns for 2004 reflecting "all income earned by gains and losses generated by, and deductible expenses referable to assets awarded" to either Tina or Troy under the initial decree. Thus, the provision in paragraph 8 of the Rule 11 agreement that, "Any tax prepayment or deficit will belong to Troy for pawn shops, his income," would be redundant if it only applied to the year 2004.

Accordingly, we hold that the district court's modification of the income tax provisions in the decree of divorce did not constitute an abuse of discretion.

## CONCLUSION

We hold that (1) Tina was not harmed by the district court's failure to issue findings of fact and conclusions of law; (2) the district court did not abuse its discretion by ordering that M.F. attend St. Peter's Lutheran School in Marble Falls for the 2004-05 school year and that she reside in Burnet County in order to facilitate her attendance at St. Peter's; and (3) the district court did not

16

abuse its discretion by modifying and correcting the income tax provisions of the initial decree. However, we hold that the district court abused its discretion in extending the geographic restriction on the child's residence beyond the 2004-05 school year. We reverse and remand that portion of the divorce decree for further proceedings consistent with this opinion.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Pemberton

Affirmed in Part; Reversed and Remanded in Part

Filed:   January 13, 2006